COMMONWEALTH of Pennsylvania,
Appellee,

v.

Nathaniel HUNTER, Appellant.

Superior Court of Pennsylvania.

Submitted Sept. 18, 2000.

Filed Feb. 8, 2001.

Christopher A. Feliciani, Greensburg, for appellant.

Andrea F. McKenna, Asst. Dist. Atty., Harrisburg, for Com., appellee.

Before HUDOCK, HESTER, and OLSZEWSKI, JJ.

OLSZEWSKI, J.:

¶ 1 Nathaniel Hunter appeals his judgment of sentence. We affirm.

¶ 2 In 1996, a jury found appellant guilty "of third degree murder and three counts of violating Pennsylvania's Corrupt Organizations Act ("COA")," but found him not guilty of criminal conspiracy. *Commonwealth v. Hunter*, No. 914 Pittsburgh 1997, unpublished memorandum at 1, 726 A.2d 411 (Pa.Super. filed Aug. 6, 1998) (footnotes omitted). A panel of this Court vacated appellant's judgment of sentence and remanded for a new trial because of an evidentiary error. *See id.* at 6–7. Following a second trial, a jury found appellant guilty of corrupt organizations (acquire or maintain interest), corrupt organizations (conduct or participate), and corrupt organizations (conspiracy) but not guilty of criminal homicide. *See* Jury Verdict Form, 11/8/99; *see also* N.T., 11/8/99, at 978. The trial judge sentenced appellant to two to four years' imprisonment to be served consecutively to previous sentences. N.T. Sentencing Proceedings, 1/7/00, at 49–50. This appeal followed.

¶ 3 Appellant raises six dense issues:

I. Whether the lower court erred in finding that the Court of Common Pleas of Westmoreland County[,] Pennsylvania had subject matter jurisdiction over the within charges even though the Commonwealth failed to establish that any of the acts in [sic] which the appellant was convicted occurred in Westmoreland County, Pennsylvania.

II. Whether the court erred in upholding the verdicts at each of the corrupt organization charges in finding that the Commonwealth had established the existence of a "legitimate enterprise" within the meaning of the Pennsylvania corrupt organization statute and the Pennsylvania Supreme Court's ruling in *Commonwealth vs. Besch* [544 Pa. 1], 674 A.2d 655 (Pa.1996).

III. Whether the Commonwealth presented sufficient evidence to establish that the appellant "acquired or maintained an interest in or control of an enterprise while employed by or associated with an enterprise engaged in commerce consisting of trafficking in controlled substances" within the meaning of the Pa.C.O.A. Title 18 Pa.C.S. § 911(h)(1) or 911(b)(2) [sic] as charged, all of which was in contradiction with the holding in *Commonwealth vs. Besch* [544 Pa. 1], 674 A.2d 655 (Pa.1996).

IV. Whether the verdicts at all three counts of the corrupt organizations statute were against the weight of the evidence in that the Commonwealth failed to establish the appellant's involvement in the underlying predicate act of possession and possession with intent to deliver a controlled substance as designated by the jury on the verdict slip or that the appellant acquired or maintained any interest in the alleged enterprise.

V. Whether the trial court erred in imposing an improper sentence upon the appellant which was outside the standard sentencing guidelines while considering matters on the record concerning the appellant's prior convictions as well as prior bad acts of misconduct, all of which was unfair and in error[.]

VI. Whether the trial court erred in allowing the Commonwealth to introduce excerpts of the appellant's testimony from his first trial by reading the transcripts of the first trial to the jury at appellant's second trial[.]

Brief for Appellant at 3–4 (capitalization omitted). Appellant's Statement of Questions Involved spans forty lines and one and a half pages, contrary to Rule 2116(a), which says that such statement "should not ordinarily exceed 15 lines, [and] must never exceed one page." Pa.R.A.P. 2116(a). As we have before in such a case, we turn appellant's attention to the following quote:

> With a decade and a half of federal appellate court experience behind me, I can say that even when we reverse a trial court it is rare that a brief successfully demonstrates that the trial court committed more than one or two reversible errors. .... [W]hen I read an appellant's brief that contains ten or twelve points, a presumption arises that there is no merit to any of them. I do not say that this is an irrebuttable presumption, but it is a presumption nevertheless that reduces the effectiveness of appellate advocacy. Appellate advocacy is measured by effectiveness, not loquaciousness. Aldisert, The Appellate Bar: Professional Competence and Professional Responsibility—A View from the Jaundiced Eye of One Appellate Judge, 11 Cap.U.L.Rev. 445, 458 (1982).

*Estate of Lakatosh,* 441 Pa.Super. 133, 656 A.2d 1378, 1380 n. 1 (quoting *United States v. Hart,* 693 F.2d 286, 287 n. 1 (3d Cir. 1982)). Further, appellant has failed to include a copy of the trial court opinion. This is a direct violation of Pa.R.A.P. 2111(b), which reads: "There shall be ap-

pended to the brief a copy of any opinions delivered by any court ... below relating to the order or other determination under review, if pertinent to the questions involved." Because we can still adequately review appellant's claims, though, we decline to dismiss his appeal.

■ ¶ 4 Before we can discuss the merits of appellant's claims, however, we can dispose of one of his issues on other grounds. Appellant failed to comply sufficiently with Pa.R.A.P.1925(b), which allows the lower court to order the appellant to submit "a concise statement of the matters complained of on the appeal...." Pa. R.A.P.1925(b). While appellant completed a Rule 1925(b) statement, he neglected to raise issue six in that statement. Our Supreme Court has held:

> From this date [October 28, 1998] forward, in order to preserve their claims for appellate review, Appellants must comply whenever the trial court orders them to file a Statement of Matters Complained of on Appeal pursuant to Rule 1925. *Any issues not raised in ·a 1925(b) statement will be deemed waived.*

*Commonwealth v. Lord,* 553 Pa. 415, 719 A.2d 306, 309 (1998) (emphasis added). Consequently, appellant has waived issue six on appeal. We now turn to appellant's five remaining issues.

■ ¶ 5 Appellant first claims that the Court of Common Pleas of Westmoreland County, where appellant's trial took place, did not have·jurisdiction because the Commonwealth failed to prove that any of appellant's criminal acts took place in Westmoreland County.[1] *See* Brief for Appellant at 8. In fact, the Commonwealth charged appellant with criminal homicide arising from a homicide in Westmoreland

---

1. As noted above, the Commonwealth charged appellant with various corrupt organizations charges and homicide, though the jury acquitted him of homicide. Appellant does not claim that Westmoreland County was without subject matter jurisdiction be-. cause of this acquittal, but rather that because he did not sell drugs in Westmoreland Coun-

ty, the court had no authority over the drug crimes. We have no indications that a trial court would lose subject matter jurisdiction because an appellant was acquitted, and therefore proceed with the claim that the Commonwealth erred in charging appellant in Westmoreland County for the drug charges.

County and with various corrupt organizations charges originating in Fayette County. *See* Trial Court Opinion in Support of Order Appealed Filed Pursuant to Pennsylvania Rule of Appellate Procedure No.1925(a) [hereinafter "Trial Court Opinion"], 4/14/00, at 8, 2. As noted above, the jury acquitted appellant of the criminal homicide charge. Appellant maintains that because none of his activities relating to corrupt organizations occurred in Westmoreland County, the Court of Common Pleas of Westmoreland County lacked subject matter jurisdiction over those charges. *See* Brief for Appellant at 9. Our Supreme Court spoke on this subject in *Commonwealth v. McPhail*, 547 Pa. 519, 692 A.2d 139 (1997) (plurality decision). In *McPhail*, the appellant sold drugs to an undercover police officer in both Allegheny and Washington Counties. *See id.* at 140. He was charged in both counties, pleaded guilty to the Washington County offenses, and moved to dismiss the Allegheny County charges pursuant to 18 Pa.C.S. § 110. Section 110 bars prosecution when a defendant's offenses in more than one county all " 'aris[e] from the same criminal episode' " and were " 'within the jurisdiction of a single court.' " *Id.* at 141 (quoting 18 Pa.C.S. § 110) (emphasis omitted). Consequently, the Court had to determine "whether all the offenses were within the jurisdiction of a single court." *Id.* A plurality of the Court determined that "the Court of Common Pleas of Washington County had subject matter ... jurisdiction over the offenses allegedly committed by appellant in Allegheny County", and that "the Court of Common Pleas of Allegheny County had jurisdiction over the offenses committed in Washington County" because all offenses arose from the same criminal episode. *Id.* at 144, n. 5. Section 110 therefore barred the appellant's prosecution in Allegheny County. *See id.* at 145. While certainly "the Supreme Court's decision in *McPhail* ... is a plurality decision, and thus has limited precedential value," *Commonwealth v. Travaglia*, 723 A.2d 190, 193 n. 2 (Pa.Super.1998), "it can no longer be disputed that courts of common pleas have statewide jurisdiction and may preside over trials which take place beyond the territorial limits of the county in which the court sits," *Commonwealth v. Wittenburg*, 710 A.2d 69, 73 (Pa.Super.1998).

¶ 6 Our own Court has recently spoken on this issue as well. In *Commonwealth v. Bethea*, 761 A.2d 1181, 1183–84 (Pa.Super.2000), the Commonwealth charged the appellant with illegal substance offenses in Cumberland County in 1998 and with driving with a suspended license in Franklin County in 1999. The appellant's trial was in Franklin County on all charges. *See id.* at 1184. This Court reversed, holding that the Court of Common Pleas of Franklin County had no jurisdiction over the illegal substance charges. *See id.* In doing so, the Court determined that "a condition precedent to the exercise by a single county of jurisdiction in a case involving multiple offenses in various counties is: the offenses must constitute a single criminal episode." *Id.* (emphasis omitted). Because "[t]he offenses were neither 'logically or temporally related [nor did they] share common issue of law and fact,' " they did not constitute a single criminal episode. *Id.* (quoting *McPhail*, 692 A.2d at 141). Consequently, we must determine whether appellant's homicide and corrupt organizations charges constituted a single criminal episode.

> "[I]n ascertaining whether a number of statutory offenses are 'logically related' to one another, the court should initially inquire as to whether there is a substantial duplication of factual, and/or legal issues presented by the offenses. If there is duplication, then the offenses are logically related and must be prosecuted at one trial. The mere fact that the additional statutory offenses involve additional issues of law or fact is not sufficient to create a separate criminal episode since the logical relationship test does not require 'an absolute identity of factual backgrounds.'

* * *

The temporal relationship between criminal acts will be a factor which frequently determines whether the acts are 'logically related.' However, the definition of a 'single criminal episode' should not be limited to acts which are immediately connected in time.... 'Transaction' is a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship.' "

*Commonwealth v. Hude*, 500 Pa. 482, 458 A.2d 177, 181–82 (1983) (citations omitted). "Thus, where a number of charges are logically and/or temporally related and share common issues of law and fact, a single criminal episode exists." *Id.* at 183. Here, all of the charges relate to appellant's involvement with a drug organization. As the trial court noted,

the "headquarters" of the organization [was] the Edenborn Social Club.... The head of the organization with which [appellant] was associated was Ronald Whethers. Mr. Whethers resided in a small town called Edenborn in Fayette County. There, he built a structure which was used by the members of the illegal organization of drug distributors to meet and discuss matters relating to the purchase, sale and distribution of cocaine in the western Pennsylvania area.

* * *

Whethers was the primary source of the cocaine.... The Whethers group protected their drug-dealing "turf" as if they had a proprietary claim to the right to sell drugs in a given area, which was a right exercised and enforced by them. [Organization member Timothy] Taylor sold cocaine on the streets at Lemonwood Acres, at Coach's Corner, and at Gene's Bar in Fayette County. Taylor observed [appellant] selling drugs in Lemonwood Acres, Coach's Corner, and Gene's Bar....

[Appellant] was present and playing basketball on the hill near the Edenborn Social Club on June 6, 1993, when Ronald Whethers was overheard giving the directive, "[G]et my shit." [Appellant] travelled [sic], as part of the convoy of Whethers operatives, to Monessen [in Westmoreland County] to locate the missing cocaine [from a Mr. Michael Lucas.] [There, various members of the organization beat Mr. Lucas to death.] After the fatal beating took place, [appellant] proceeded with the others to Connellsville to take care of more business relating to competition in the business of illegal drug sales.

Trial Court Opinion, 4/14/00, at 4–5, 7–8. Appellant's activities were all logically related because they were all entwined with, and indeed furthered the interest of, the drug organization. Moreover, the crimes shared common facts. The homicide charge was only explicable in relation to the corrupt organizations charges. This is entirely distinguishable from *Bethea*, 761 A.2d at 1183–84, where the appellant had drug charges in one county and a suspended license charge in another. This is more like *McPhail*, 692 A.2d at 144, 144 n. 5, where the appellant sold drugs to the same person in two different counties. Thus, it was logical, and even required, that the Commonwealth charge appellant in one county with all of the offenses comprising this one criminal episode. Appellant's first argument is without merit.

¶ 7 Next, appellant raises two sufficiency of the evidence arguments. Our standard of review for sufficiency claims is well settled:

"[W]hether, viewing the evidence in the light most favorable to the Commonwealth, and drawing all reasonable inferences favorable to the Commonwealth, there is sufficient evidence to find every element of the crime beyond a reasonable doubt.... [sic] The Commonwealth may sustain its burden of proving every

element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence....[sic] Moreover, in applying the above test, the entire trial record must be evaluated and all evidence actually received must be considered....[sic] Finally, the trier of fact, while passing upon the credibility of witnesses and the weight to be afforded the evidence produced, is free to believe all, part or none of the evidence."

*Commonwealth v. Petaccio*, 764 A.2d 582, 584 (Pa.Super.2000) (quoting *Commonwealth v. Griscavage*, 512 Pa. 540, 517 A.2d 1256, 1257 (1986)).

¶ 8 First, appellant argues that the Commonwealth failed to sufficiently prove that the Edenborn Social Club was a legitimate enterprise pursuant to Pennsylvania's Corrupt Organization Statute and *Commonwealth v. Besch*, 544 Pa. 1, 674 A.2d 655 (1996). *See* Brief for Appellant at 9. A jury found appellant guilty of violating three sections of the Pennsylvania Corrupt Organizations Statute, 18 Pa. C.S.A. § 911 et seq. ("the Act"):

(2) It shall be unlawful for any person through a pattern of racketeering activity to acquire or maintain, directly or indirectly, any interest in or control of any enterprise.

(3) It shall be unlawful for any person employed by or associated with any enterprise to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity.

(4) It shall be unlawful for any person to conspire to violate any of the provisions of subsections (1), (2), or (3) of this subsection.

18 Pa.C.S.A. § 911(b)(2), (3), (4). In *Besch*, our Supreme Court determined that "not all criminal 'enterprises' are within the purview of [the Act]." *Besch*, 674 A.2d at 660. Instead, the only "prohibited activity under this statute is the infiltration of *legitimate businesses* by a pattern of illegal acts." *Id.* (emphasis added). Consequently, the Court held that the Act requires the Commonwealth to prove that the illegal activity is connected to "a legitimate business [ ] or an[ ] attempt to infiltrate a legitimate business." *Id.* at 661. Here, the Edenborn Social Club served as the organization's headquarters. As the trial court found:

[t]he Club was also used for social gatherings, including weddings, birthday parties, holiday celebrations, and weekend entertainment. Certain individuals, who were part of the drug distribution scheme directed by Whethers, had a membership card which enabled them to gain admittance to the Club. Members' guests would pay a cover charge to go to the Club on evenings when entertainment, such as dancers, was offered.

The Club had a bar which served alcoholic beverages and food, and had a pool table, video games and pinball machines. On occasion, those at the Club would pay a fee for one or more of the available products or services. The Club had at least one paid employee who tended bar.

Other legitimate eating and drinking establishments were located within a five to ten mile radius of the Edenborn Social Club. These nearby clubs had amenities similar to those offered at the Club, such as video machines and pool tables. Before the opening of the Edenborn Social Club, participants in the Club patronized these other establishments more frequently.

Trial Court Opinion, 4/14,00, at 5–6 (emphasis omitted). Moreover, the court found that the revue generated by the Edenborn Social Club "directly affected legal commerce in the Edenborn area of Fayette County" and "competed with the ability of other local legitimate establishments to maintain their profitability." *Id.* at 6. We find this evidence sufficient to demonstrate that the Edenborn Social Club was a legitimate business.

¶ 9 Appellant also contends that the Commonwealth failed to sufficiently

prove that he "[ ]acquired or maintained an interest in or control of an enterprise while employed by or associated with an enterprise engaged in commerce consisting of trafficking in controlled substances." Brief for Appellant at 14. He admits that his codefendants testified against him, but "maintains that without additional, objective evidence of [a]ppellant's alleged involvement with the Whethers' organization" the evidence was insufficient. *Id.* at 15. Appellant is mistaken. Mr. Taylor agreed that appellant was "a street level dealer associated with [the] family." N.T. Trial, November 1–8, 1999, at 235. Mr. Taylor also testified that the drug organization protected its turf, *see id.* at 276, and that they allowed appellant to sell drugs on their turf without harassment. *See id.* at 216–27. At his first trial,[2] appellant himself testified that he sold drugs in Lemonwood Acres. *See id.* at 440. He also admitted to attending the Edenborn Social Club, *see id.* at 441, and that he went to Monessen and observed the other members of the Whethers organization beat Mr. Lucas. *See id.* at 460–65. While appellant denied involvement with Mr. Whethers, *see id.* at 726–27, "[t]he jury was free to believe all, part or none of the evidence presented and to assess the credibility of the witnesses." *Commonwealth v. Burns,* 765 A.2d 1144, 1150 (Pa.Super.2000). Taking the evidence above in the light most favorable to the Commonwealth, the Commonwealth presented sufficient evidence of appellant's involvement with the Whethers organization.

¶ 10 Next, appellant argues that his three corrupt organizations convictions were against the weight of the evidence. *See* Brief for Appellant at 16. His argument is confusing, though; at times he states that the verdict was against the weight of the evidence, *see id.,* then recites the standard of review for sufficiency claims. *See id.* We reiterate the difference between the two:

A motion for new trial on the grounds that the verdict is contrary to the weight of the evidence, concedes that there is sufficient evidence to sustain the verdict. Thus, the trial court is under no obligation to view the evidence in the light most favorable to the verdict winner. An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in testimony or because the judge on the same facts would have arrived at a different conclusion.... Trial judges ... do not sit as the thirteenth juror. Rather, the role of the trial judge is to determine that "notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice."

*Commonwealth v. Widmer,* 560 Pa. 308, 744 A.2d 745, 751–52 (2000) (citations omitted). We "may not reverse a verdict unless it is so contrary to the evidence as to shock one's sense of justice." *Burns,* 765 A.2d at 1150. Because the majority of appellant's argument appears to be a weight of the evidence claim, we treat it as such.

¶ 11 Appellant claims that "there was no demonstrable evidence ... as to [his] possession of a controlled substance" because the only evidence came from his coconspirators who were not credible. Brief for Appellant at 17. Appellant fails to acknowledge that he admitted that he sold drugs. *See* N.T. Trial, November 1–8, 1999, at 440. Further, while the rest of the testimony regarding appellant's drug sales came from other dealers or drug buyers, "[t]he jury was free to believe all, part or none of the evidence presented and to assess the credibility of the witnesses." *Burns,* 765 A.2d at 1150. It does not shock one's sense of justice that the jury believed these witnesses, particularly when coupled

---

2. The court admitted appellant's testimony from his first trial at his second trial. *See*

N.T., November 1–8, 1999, at 438. Appellant did not testify at his second trial.

with appellant's own admission of drug sales. Appellant's claim is without merit.

▮▮▮▮▮▮▮ ¶ 12 Lastly, appellant claims that the trial court sentenced him outside of the sentencing guidelines after considering appellant's prior conviction and prior bad acts. *See* Brief for Appellant at 18. Appellant does not claim that his sentence is illegal,[3] but rather claims that it was an abuse of discretion. "[I]t is well-settled that '[a]ppeals of discretionary aspects of a sentence are not guaranteed of right.'" *Commonwealth v. Farmer*, 758 A.2d 173, 181 (Pa.Super.2000) (quoting *Commonwealth v. Cleveland*, 703 A.2d 1046, 1048 (Pa.Super.1997)). Pursuant to Pa.R.A.P. 2119(f), "[a]n appellant who challenges the discretionary aspects of a sentence in a criminal matter shall set forth in his brief a concise statement of the reasons relied upon for allowance of appeal." Pa.R.A.P. 2119(f). Further, the appellant "'must articulate a substantial question as to the propriety of his sentence.'" *Farmer*, 758 A.2d at 182 (quoting *Cleveland*, 703 A.2d at 1048). Appellant has failed to include his Rule 2119(f) statement, and the Commonwealth has objected to that omission. *See* Brief for Appellee at 23–24 (stating that appellant did not "conform to [Rule 2119(f)'s] requirements, and the Commonwealth objects to any consideration of this issue"). "'[W]e may not reach the merits of [the] claims' where the Commonwealth has object[ed] to the omission of the statement." *Farmer*, 758 A.2d at 182 (quoting *Commonwealth v. Rodriquez*, 449 Pa.Super. 319, 673 A.2d 962, 968 (1996)). Consequently, appellant has waived this argument.

¶ 13 Judgment affirmed.

---

**3.** Indeed, appellant's sentence is not illegal. "An illegal sentence is one that exceeds the statutory limits." *Commonwealth v. Archer*, 722 A.2d 203, 209 (Pa.Super.1998) (en banc). The court sentenced him to two to four years' imprisonment for a corrupt organizations conviction. Corrupt organizations is classified as a first-degree felony, *see* 18 Pa.C.S.A. § 911(c), and "[i]n the case of a felony of the first degree," the court cannot sentence a defendant to "more than 20 years." 18 Pa. C.S.A. § 1103(1).