**COMMONWEALTH of Pennsylvania,
Appellee,**

v.

**Joseph A. KOHLER, Appellant.**

Superior Court of Pennsylvania.

Submitted Sept. 9, 2002.

Filed Nov. 20, 2002.

John J. Griffin, Philadelphia, for appellant.

Nicholas J. Casenta, Asst. Dist. Atty., West Chester, for Commonwealth, for appellee.

Before: STEVENS, BENDER, and OLSZEWSKI, JJ.

OLSZEWSKI, J.

¶ 1 Joseph Kohler ("appellant") appeals following the denial of his petition under the Post Conviction Relief Act, 42 Pa. C.S.A. § 9541 *et seq.* On appeal, appellant

argues that the Court of Common Pleas of Chester County had no jurisdiction over the offense to which he pled guilty. He also argues that his counsel's failure to raise a jurisdictional argument below rendered his counsel ineffective. We find that the court of common pleas did have jurisdiction over the offense to which appellant pled guilty and that his counsel was not ineffective.

### 1.

¶ 2 We present the factual findings of the trial court, which were presented below as a numbered list, in narrative form:

At all relevant times, the [appellant] lived in Upper Darby, Pennsylvania, which is in Delaware County. The victim, who was fourteen years old at the time of the incidents in question, resided in Chester County, Pennsylvania.

In July of 1998, the [appellant] began communicating with the victim through the internet. During the conversations, the [appellant] began talking about sex and indicated that he wanted to meet the victim to "fool around." There was no contact between the [appellant] and the victim from September, 1998 to August, 1999.

The [appellant] e-mailed the victim again in August of 1999, and inquired about meeting the victim. The victim initially refused the [appellant's] advances, but later agreed when the [appellant] offered the victim $50.00 if he met him.

Through the internet, the [appellant] and the victim agreed to meet in Malvern, Pennsylvania, which is in Chester County. The [appellant] and the victim met on August 6, 1999. Prior to the meeting, the [appellant] instructed the victim to call him so that he could be sure that he was not talking to a police officer. The victim called [appellant] at approximately 10:00 a.m. on August 6, 1999 from a phone located in Chester County.

The [appellant] picked the victim up in Chester County, and then drove him to Valley Forge National Park in Montgomery County. On the way to the park, the [appellant] offered the victim beer.

At the park, [appellant] took the victim to a secluded area. That area was located in Montgomery County. While at the secluded area ... [Appellant engaged in multiple instances of oral and anal sex with the victim].

[Appellant] drove the victim back to Malvern, Chester County. Before the victim got out of the car, the [appellant] paid him $50.00.

During the next couple of weeks, the [appellant] and the victim communicated through the internet and discussed another meeting. The [appellant] offered to pay the victim $200.00 to meet again, and the victim agreed to meet him.

Approximately two weeks after the first incident, [appellant] again met the victim in Malvern, Chester County. When the victim got into the car, [appellant] paid him $200.00, and then drove to the [appellant's] residence in Upper Darby, Delaware County. During the car ride, the [appellant] asked victim to perform oral sex on him, which the victim did.

When they arrived at [appellant's] residence, the [appellant] took the victim into his bedroom. He then suggested that they shower together. While in the shower ... [and later in the bedroom, the appellant engaged in multiple instances of oral and anal sex with the victim]. [T]he [appellant then] drove the victim back to Malvern, Chester County.

Over the next few weeks, [appellant] repeatedly e-mailed the victim and of-

fered to pay him more money for sex. Through e-mail messages, [appellant] told the victim that the [appellant] wanted the victim "to be mine until you're eighteen" and that [appellant] wanted to videotape them having sex.

On or about September 14, 1999, [appellant] sent the victim three nude photographs of [appellant] through the internet. All internet communications between [appellant] and the victim occurred while the [appellant] was using a computer located in Delaware County and the victim was using a computer located in Chester County.

The incidents described above were investigated by members of the Malvern Police Department. On September 22, 1999, the [appellant] gave a taped interview to the police. During the interview, [appellant] admitted to meeting the victim on the internet and having sexual relations with him in Valley Forge National Park, the [appellant's] car and [appellant's] residence. [Appellant] admitted that he knew the victim was only fourteen when these acts occurred.

On September 23, 1999, [appellant] gave a second taped interview in which he gave more details about the contact he had with the victim. [Appellant] told the police that the victim performed oral sex on [him] in [appellant's] car while [appellant] was driving on Route 252 "down until we hit Radnor Township on Darby Paoli Road, near, there's a park there, the Willows." The area of Route 252 described by the [appellant] is on or near the county line separating Chester County and Delaware County. Because the sexual assault occurred in a moving vehicle, it is unclear whether it occurred in Chester County, Delaware County, or both counties.

The [appellant] and his counsel were aware of the fact that, if [appellant] objected to having all counts heard in Chester County, both Montgomery County and Delaware County would assume responsibility for prosecuting the crimes that occurred in their respective counties. Instead of facing trials in three separate counties, which could have resulted in three separate sentences, [appellant] agreed to plead guilty to one count of [Involuntary Deviate Sexual Intercourse] in Chester County. In consideration for [appellant's] plea, the Commonwealth agreed to nolle pros all other counts.

Order, 2/14/02, at n. 1, 2–4.

¶ 3 Following the guilty plea, appellant was sentenced to six to fifteen years of incarceration. Appellant filed a Post Conviction Relief Act petition requesting that the judgment of sentence be vacated. This appeal followed the denial of that petition.

### 2.

Appellant's first argument is that

the order of the PCRA court should be reversed because the Chester County Court of Common Pleas did not have jurisdiction over criminal activity that was alleged to have occurred in three distinct counties. There was no allegation of sexual activity in Chester County and the factual basis for the [guilty] plea occurred in Montgomery County.

Brief of Appellant at 9. As appellant correctly points out, "[The Superior Court] has held that a condition precedent to the exercise by a single county to jurisdiction in a case involving multiple offenses in various counties is: the offense must constitute a single criminal episode." *Id. See Commonwealth v. Hunter*, 768 A.2d 1136, 1140 (Pa.Super.2001); *Commonwealth v.*

*Bethea,* 761 A.2d 1181, 1183–84 (Pa.Super.2000).

¶ 4 This condition precedent originates from the Pennsylvania Supreme Court case *Commonwealth v. McPhail,* 547 Pa. 519, 692 A.2d 139 (1997). In McPhail, our Supreme Court discussed the jurisdiction of the Court of Common Pleas of Washington County over activities occurring in Allegheny County. The Court held that such jurisdiction existed because offenses at issue in both counties "all ... arose from the same criminal episode." *Hunter,* 768 A.2d at 1140 (citing *McPhail,* 692 A.2d at 145 n. 5).

¶ 5 Appellant argues that the offenses he was accused of committing in multiple counties did not constitute a single criminal episode and that, as a result, the single county of Chester did not have jurisdiction. Appellant asserts that "It is undisputed that the acts charged herein were committed in multiple counties." Brief of Appellant at 10. "The multiple allegations of criminal activity charged against the appellant were not based on the same conduct and were not part of the same criminal episode and as such, were required to be prosecuted in distinct counties." *Id.* at 13. Continuing, appellant argues: "The single count upon which the appellant entered a plea was not committed in Chester County." *Id.* at 10.

¶ 6 The question of whether Chester County had jurisdiction can be understood as two separate questions: (1) whether the single count to which appellant pled guilty was subject to jurisdiction in Chester County under the traditional *lucus criminus* concept of jurisdiction; or (2) whether the allegations against appellant, in total, subjected appellant to Chester County jurisdiction because they constituted a single criminal episode.

▐▬▬▬ ¶ 7 In response to the first question: It is likely that the single count to

which appellant pled guilty, involuntary deviate sexual intercourse, when considered in the context of the facts of the case, subjected appellant to the jurisdiction of the Chester County Court of Common Pleas.

▐▬▬▬ ¶ 8 It is not disputed that a county court of common pleas has jurisdiction over offenses that take place within its borders. *See generally McPhail,* 692 A.2d at 139. Here, while it may be true that the plea offense of indecent sexual deviate intercourse culminated in sexual contact outside of Chester County, the offense was necessarily predicated on action taken by appellant in Chester County. The facts of the case reveal that the sexual contact occurring outside of Chester county resulted from appellant's transmission of internet solicitations to the victim, who was then located in Chester County. Also, the offense giving rise to the guilty plea was facilitated by appellant entering Chester County to remove victim, with the criminal objective of having sexual relations with the victim, and to then return the victim to Chester County.

▐▬▬▬ ¶ 9 With regard to the second question: We also find that, considered in totality, the offenses charged constituted a single criminal episode, and so subjected appellant to Chester County jurisdiction. "[W]here a number of charges are logically or temporally related and share common issues of law and fact, a single criminal episode exists." *McPhail,* 692 A.2d at 141 (quoting *Commonwealth v. Hude,* 500 Pa. 482, 458 A.2d 177, 183 (1983)). More particularly,

> In ascertaining whether a number of statutory offenses are 'logically related' to one another, the court should initially inquire as to whether there is a substantial duplication of factual, and/or legal issues presented by the offenses. [ . . . ]

The mere fact that the additional statutory offenses involve additional issues of law or fact is not sufficient to create a separate criminal episode since the logical relationship test does not require 'an absolute identity of factual backgrounds.'

\*   \*   \*   \*   \*   \*

The temporal relationship between criminal acts will be a factor which frequently determines whether the acts are 'logically related.' However, the definition of a 'single criminal episode' should not be limited to acts which are immediately connected in time.... 'Transaction' is a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship.

*Hunter*, 768 A.2d at 1140–41 (quoting *Hude*, 458 A.2d at 182–83).

¶ 10 Appellant maintains that

the interaction[s] between the appellant and the complainant were separate and distinct encounters that occurred over a fourteen-month period of time. The facts indicate that the interactions occurred at different locations (park, house, car, internet) and different inducements were used (monetary compensation, offers of beer). Accordingly this was not a single criminal episode. There is no continuation of conduct between the three counties, nor was the initial or subsequent contact contingent upon the others.

Brief of Appellant at 13. We disagree.

■ ¶ 11 "Our standard of review for an order denying post-conviction relief looks to whether the PCRA court's determination is supported by the record and whether it is free of legal error." *Commonwealth v. Champney*, 783 A.2d 837, 839 (Pa.Super.2001). Here, the trial court's findings are supported by the record and are free of legal error.

¶ 12 The trial court found that the offenses charged "are logically and temporally related to each other." Order, 2/14/02, at n. 1, 6. According to the trial court: "In this case, one event led to the next. Further, they occurred in a continuous time sequence." *Id.* at 7.

¶ 13 Finding its conclusions reasonable, we agree with the trial court that appellant's acts constituted one criminal episode. Appellant

was charged with Involuntary Deviate Sexual Intercourse ... [18 Pa.C.S.A. § 3123], Indecent Assault [18 Pa.C.S.A. § 3126], Corruption of Minors [18 Pa. C.S.A. § 6301], Unlawful Contact or Communications with Minor—Sexual Offenses [18 Pa.C.S.A. § 6318(a)(1) ], Unlawful Contact or Communications with Minor—Open Lewdness [18 Pa. C.S.A. § 6318(a)(2) ], Unlawful Contact or Communications with Minor—Prostitution [18 Pa.C.S.A. § 6318(a)(3) ], and Unlawful Contact or Communications with Minor—Sexual Materials and Performances [18 Pa.C.S.A. § 6318(a)(4) ]. He was charged with eleven counts of each crime.

Order, 2/14/02, at n. 1, 1.

¶ 14 Inspection of these offenses reveals that their prosecution would have involved "a substantial duplication of factual, and/or legal issues presented by the offenses." *Hunter*, 768 A.2d at 1140–41 (Pa.Super.2001) (quoting *Hude*, 458 at 181). For example, the involuntary deviate sexual intercourse charge, to which appellant plead guilty, provides that

A person commits a felony of the first degree when he or she engages in deviate sexual intercourse with a complainant: .... (7) who is less than 16 years of age and the person is four or more

years older than the complainant and the complainant and the person are not married to each other.

18 Pa.C.S.A. § 3123. Prosecution of this charge would have required a factual inquiry into the nature of the physical contact between appellant and the victim, and their relative ages, in the same way that the indecent assault charge would have.

A person who has indecent contact with the complainant or causes the complainant to have indecent contact with the person is guilty of indecent assault if: ... (8) the complainant is less that 16 years of age and the person is four or more years older than the complainant and the complainant and the person are not married to each other.

18 Pa.C.S.A. § 3126.

¶ 15 Similarly, the charge of unlawful contact or communications with minor—sexual offenses, would have required an inquiry into the nature of the physical contact intended by appellant, as conceivably evidenced by what contact ultimately occurred. 18 Pa.C.S.A. § 6318(a) provides:

A person ... commits an offense if he, knowing that he is contacting or communicating with a minor within this commonwealth, intentionally contacts or communicates with that minor for the purpose of engaging in activity prohibited under any of the following: (1) any of the offenses enumerated in Chapter 31 (relating to sexual offenses).

¶ 16 We find that the facts of this case support jurisdiction in the Chester County Court of Common Pleas. All of the charges against appellant related to appellant's illicit relationship with the victim. The fact that the contact between appellant and victim developed over time, that different inducements were used over time to entice that contact, and that the location of the contact varied, only nuances the

determinations to be made under each count. The balance of the charges presented "a substantial duplication of factual, and/or legal issues." Hunter, 768 A.2d at 1140 (quoting Hude, 458 A.2d at 181).

### 3.

¶ 17 Appellant's second argument is that he was deprived of his constitutionally protected right to counsel. "Appellant submits that there was no reasonable basis in counsel's failure to challenge the jurisdiction of the Chester County Court of Common Pleas as a result of the multi-county activity that was charged." Brief of Appellant at 16.

Our standard of review in ineffectiveness cases is well-settled. Counsel is presumed effective, and the appellant has the burden of proving otherwise. Appellant establishes ineffectiveness of counsel with a demonstration that: (1) the underlying claim is of arguable merit; (2) counsel's action or inaction was not grounded on any reasonable basis designed to effectuate Appellant's interest; and (3) there is a reasonable probability that the act or omission prejudiced Appellant in such a way that the outcome of the proceeding would have been different. If the issue underlying the charge of ineffectiveness is not of arguable merit, counsel will not be deemed ineffective for failing to pursue a meritless issue. Also, if the prejudice prong of the ineffectiveness standard is not met, "the claim may be dismissed on that basis alone and [there is no] need [to] determine whether the [arguable merit] and [client's interests] prongs have been met."

*Commonwealth v. D'Collanfield*, 805 A.2d 1244, 1246 (Pa.Super.2002) (citations omitted) (bracketed language in original).

¶ 18 Appellant argues that "counsel had no reasonable basis for failing to challenge

... jurisdiction." Brief of Appellant at 17. Suggesting an advantage to be gained by challenging jurisdiction, appellant points out that in *Commonwealth v. Bethea,* 761 A.2d at 1181, the Superior Court "reversed a conviction for illegal substances offenses and driving with a suspended license in Franklin County where the illegal substances charge occurred in Cumberland County." Brief of Appellant at 17. As appellant notes, the *Bethea* Court "found that Franklin County had no jurisdiction over the illegal substances charge." *Id.*

 ¶ 19 This case is distinguishable from *Bethea,* however, in that, here, appellant entered a negotiated guilty plea, whereas the appellant in *Bethea* was convicted by a jury. The difference is that a defendant entering a negotiated guilty plea, unlike a defendant defending prosecution, has conceded to elements of the prosecution in hopes of benefiting from his concession. As explained by the trial court, appellant benefited by not challenging jurisdiction. Had appellant challenged jurisdiction,

> he would have been prosecuted in the other counties, as well as in this county, for the illegal activity that occurred in each jurisdiction. [Appellant's] counsel felt that they would get a more favorable result by having all charges heard at one time in front of one court. By doing so, they avoided the possibility (and likelihood) that [appellant] would be found guilty in all three counties and given three individual sentences, which could have resulted in [appellant] doing more jail time than was agreed upon in the plea. Further, [appellant] retained an expert to testify on his behalf. [Appellant's] counsel were unsure whether the expert, who was from Maryland, would be available to testify three separate times. Accordingly ... counsel had a reasonable basis for their chosen

course of conduct. Moreover, counsel discussed these issues with the [appellant], who agreed with their suggested course of action.

Order, 2/14/02, at n. 1, 8.

¶ 20 We agree with the trial court that such a basis for not challenging jurisdiction was reasonably designed to effectuate appellant's interests. We are not persuaded that appellant's counsel was ineffective.

¶ 21 Order affirmed.