J-S28026-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DAQUAN POWERS | : | |
| | : | |
| Appellant | : | No. 1999 EDA 2020 |

Appeal from the Judgment of Sentence Entered November 12, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0004878-2017

BEFORE:   BOWES, J., DUBOW, J., and PELLEGRINI, J.[*]

MEMORANDUM BY DUBOW, J.:                   **FILED OCTOBER 8, 2021**

Appellant, Daquan Powers, appeals from the November 12, 2019 Judgment of Sentence entered in the Philadelphia County Court of Common Pleas following his jury conviction of First-Degree Murder, Firearms Not to Be Carried Without a License, Carrying Firearms in Public in Philadelphia, and Possession of an Instrument of Crime.[1]  Appellant challenges the denial of his pretrial Motion *in Limine*, the sufficiency and weight of the evidence, and the discretionary aspects of his sentence.  After careful review, we affirm.

The relevant facts and procedural history are as follows.  On the afternoon of May 10, 2016, surveillance video recorded Appellant's girlfriend, Sikeera Adams, drive a gold-colored car with a distinct sunroof and noticeable

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 2502(a), 6106(a)(1), 6108, and 907, respectively.

damage and arrive at the corner of 30th and Oxford Streets in North Philadelphia. At 2:34 PM, a man wearing a gray hoodie sweatshirt and tan or khaki pants, alighted from the vehicle. Shortly thereafter, at approximately 2:37 PM, the victim,[2] who was standing on the same street corner, was shot approximately twenty times and died from his injuries.[3]

As the shots rang out, people from the neighborhood appeared on the scene. Relevantly, cousins Timothy and Amin Budd, who lived approximately four houses from the corner, were inside when they heard the shots. Amin Budd stepped outside of the house and saw a man wearing a gray hoodie and blue jeans running from the scene, but he did not recognize the shooter. When Amin Budd reached the corner, he saw a gold-colored car quickly pulling away.

John Linder, the victim's friend and a neighbor, was also nearby during the shooting. Initially, Linder ran from the sound of gunshots, but returned to the scene when the shots stopped to find the victim dead. Less than two minutes later, Timothy Budd told Linder that "Quanny"[4] had shot and killed the victim.

_____

[2] The victim was known in the neighborhood as "Ills," "Nah-Nah," and "Nana."

[3] Approximately five days earlier, Appellant had attempted to kill the victim and another man by firing numerous gunshots at them. When those men fled in separate directions, Appellant pursued the victim and continued to shoot at him.

[4] Appellant was known in the neighborhood as "Quanny."

On the night of the shooting, Appellant boasted to his girlfriend and two friends, Tiffanie McCall and Nashawn Jones,[5] that Appellant had killed the victim.

Three days later, Philadelphia police officers saw the gold-colored vehicle in the neighborhood. The officers spoke with its driver, Sikeera Adams, and determined that the car was likely the one from the surveillance video. Police arrested Adams on an active warrant and obtained a warrant to search her car. Upon conducting the search, police found, *inter alia*, one unused 9mm bullet and a letter addressed to "Quanny."

Relevant to the instant appeal, following the shooting, Linder gave police a written statement that he had been with the victim immediately prior to hearing gunshots. Linder explained that the victim had walked away from Linder toward the corner or 30th and Oxford Streets to speak privately on his cell phone with his girlfriend. Linder stated that when he heard the gunshots, he ran away from the victim. When the shots stopped, Linder ran back and saw the victim wounded on the ground. Linder stated that he did not see who had shot the victim, but within a few minutes of the shooting, Timothy Budd told Linder that from his porch, he saw Appellant, wearing a gray hoodie and "dark blue jeans" shoot the victim.[6]

---

[5] Nashawn Jones was shot and killed in August 2016.

[6] On May 12, 2016, Mr. Budd also gave a written statement to police identifying Appellant as the shooter, but Mr. Budd was not available to testify as he died of natural causes in before trial.

- 3 -

On June 6, 2016, police officers arrested Appellant on an outstanding warrant. Officers seized Appellant's cell phone at the time of his arrest. Cell phone location data established that Appellant's cell phone was in the area of the crime at the time of the shooting and that Appellant left that area shortly after the shooting.

The Commonwealth charged Appellant with the above crimes.[7] On January 26, 2019, Appellant filed a counselled pretrial Motion *in Limine* to exclude as hearsay the statement Timothy Budd made to Linder identifying Appellant as the shooter. On April 3, 2019, the Commonwealth filed a Motion *in Limine* to admit Timothy Budd's statement to Linder at trial. On April 12, 2019, following a hearing, the trial court denied Appellant's Motion, finding the statement admissible under as a present sense impression.

On June 26, 2019, while still represented by counsel, Appellant *pro se* filed a "Motion of *Limine*," where he asked the court to preclude the Commonwealth from offering Timothy Budd's "excited utterance" statement as evidence at trial. On October 2, 2019, the trial court denied Appellant's *pro se* Motion.

Appellant's jury trial commenced on November 6, 2019. The Commonwealth presented the testimony of numerous witnesses to establish the facts set forth above. Relevant to the issues raised in this appeal, Amin Budd testified that at the time of the victim's murder, he was visiting his

---

[7] The Commonwealth also charged Appellant with one count of Third-Degree Murder. The jury acquitted Appellant of that charge.

mother who lived half a block west of the corner of 30th and Oxford Streets. He testified that, after hearing gunshots ring out, he went to the corner to see what happened and he saw a man in a hoodie running up Corlies Street.[8] He testified that, after he realized that the victim had been killed, he ran to Corlies Street where he saw a "little gold car pull off the block." N.T., 11/6/19, at 100. Amin Budd testified that, on May 18, 2016, he gave the police a statement indicating that, after hearing approximately ten gunshots, he went outside, looked towards Corlies Street, and saw a man in a blue jeans and a gray hoodie with the hood up running. *Id.* at 118.

Tiffanie McCall testified that, on March 30, 2017, she gave a statement to Philadelphia Police detectives. In her statement, McCall indicated that, on the night of the victim's murder, Appellant admitted to killing the victim, stating: "I ran up on him. He was on his phone. I shot him. Ills never seen it coming. When he went down, I stood over him and I just kept shooting." N.T., 11/7/19, at 62-63. McCall also admitted on cross-examination that, to obtain a protection from abuse order against Nashawn Jones, she had reported to police that Jones and Appellant had killed the victim. *Id.* at 77-80.

On November 12, 2019, the jury convicted Appellant of First-Degree Murder, Firearms Not to Be Carried Without a License, Carrying Firearms in Public in Philadelphia, and Possession of an Instrument of Crime. That same day, the trial court imposed a mandatory sentence of life imprisonment for

---

[8] Corlies Street runs in a northbound direction perpendicular to Oxford Street, just west of 30th Street.

Appellant's conviction of First-Degree Murder and consecutive sentences of three to six years', one to two years', and one to two years' incarceration respectively for Appellant's Firearms Not to Be Carried Without a License, Carrying Firearms in Public in Philadelphia, and Possession of an Instrument of Crime convictions.

Appellant filed a Motion for Reconsideration of Sentence and a separate Post-Sentence Motion challenging the weight and sufficiency of the evidence, as well as the discretionary aspects of sentence. On December 2, 2019, the trial court denied Appellant's Motion for Reconsideration of Sentence. On October 16, 2020, the trial court denied Appellant's Post-Sentence Motion.[9]

This appeal followed. Both Appellant and the trial court have complied with Pa.R.A.P. 1925.

Appellant raises the following issues on appeal:

[1.] Whether the trial court abused its discretion when it denied [A]ppellant's [M]otion *in* [L]*imine* to exclude from admissible evidence the hearsay statement from deceased Commonwealth witness Timothy Budd[?]

[2.] Whether the verdict was against the sufficiency of the evidence when the pants [A]ppellant was wearing clearly scene

---

[9] Pursuant to Pa.R.Crim.P. 720(B)(3)(a), a post-sentence motion is deemed denied by operation of law if the trial court fails to rule on it within 120 days. Accordingly, pursuant to Rule 720(B)(3)(c), the Philadelphia County Clerk of Courts should have entered an order on March 20, 2020, denying Appellant's November 21, 2019 Post-Sentence Motion by operation of law. However, a breakdown in the operation of the occurred and the Philadelphia County Clerk of Courts failed to enter such an order. Because Appellant filed a timely appeal from the trial court's October 16, 2020, we treat Appellant's Notice of Appeal as timely filed and proceed to address his issues on appeal.

[*sic*] in the relevant video, was a different color than the pants attributable to the killer[?]

[3.] Whether the verdict was against the weight of the evidence when it was clear from the relevant video that [A]ppellant had on tan pants and the killer, according to eyewitnesses, had on blue jeans[?]

[4.] Whether the discretionary sentence was harsh and unfair since [A]ppellant was sentenced to the mandatory [l]ife [w]ithout the [p]ossibility of [p]arole for Murder [o]f [t]he First Degree[?]

Appellant's Brief at 5.

In his first issue, Appellant challenges the trial court's denial of his Motion *in Limine* seeking to preclude Linder from testifying that Timothy Budd identified Appellant as the victim's killer.[10] ***Id.*** at 12.

Before we reach the merits of Appellant's claim, we consider whether he has preserved it. "The Rules of Appellate Procedure state unequivocally that each question an appellant raises is to be supported by discussion and analysis of pertinent authority." ***Commonwealth v. Martz***, 232 A.3d 801, 811 (Pa. Super. 2020) (citation and bracketed language omitted). ***See*** Pa.R.A.P. 2111 and Pa.R.A.P. 2119 (listing argument requirements for appellate briefs).

Instantly, although the argument section of Appellant's Brief contains citation to boilerplate case law explaining the concept of hearsay and the

---

[10] Appellant has not specified whether he challenges the trial court's denial of his counselled Motion *in Limine* or his *pro se* "Motion of *Limine*." However, given that Appellant has cited the Pennsylvania Rule of Evidence relevant to the "excited utterance" exception to the hearsay rule and included boilerplate case law explaining that exception, ***see*** Appellant's Brief at 11, we infer that he has intended to challenge the denial of his *pro se* "Motion of *Limine*." Appellant has not discussed, let alone mentioned, the trial court's denial of his earlier Motion *in Limine*, where the court concluded that Timothy Budd's statement was admissible pursuant to the "present sense exception."

excited utterance exception to the rule excluding the admission of hearsay evidence, Appellant has failed to apply the facts of this case to the cited authority, explain in what way Timothy Budd's statement did not satisfy the excited utterance exception to the hearsay rule, or set forth any articulable claim of trial court error. Instead, in his two-paragraph argument, he merely highlights the inconsistencies between Timothy Budd's statement and the statements of the other Commonwealth witnesses, and calls into question Budd's credibility.[11]

When issues are not properly raised and developed in briefs with arguments that are sufficiently developed for our review, we may dismiss the appeal or find certain issues waived. *Commonwealth v. Hardy*, 918 A.2d 766, 771 (Pa. Super. 2007) *See* Pa.R.A.P. 2101 (explaining that substantial briefing defects may result in dismissal of appeal). It is not the role of this Court to develop an appellant's argument where the brief provides mere cursory legal discussion. *Commonwealth v. Johnson*, 985 A.2d 915, 925 (Pa. 2009). *See also In re C.R.*, 113 A.3d 328, 336 (Pa. Super. 2015) ("This Court will not consider an argument where an appellant fails to cite to any legal authority or otherwise develop the issue."). Furthermore, we will find an appellant's issue waived where the argument portion of his brief lacks meaningful discussion of relevant legal authority, if this lack of analysis

_____

[11] To the extent that this issue, therefore, is essentially a challenge to the weight the jury gave to the evidence, we address Appellant's weight of the evidence claim, *infra*.

precludes us from conducting meaningful appellate review. *In re R.D.*, 44 A.3d 657, 674 (Pa. Super. 2012).

Appellant's failure to develop his argument in support of this claim has precluded meaningful appellate review. Thus, we find it waived.

In his second issue, Appellant challenges the sufficiency of the Commonwealth's evidence in support of his First-Degree Murder conviction. Appellant's Brief at 13. After citing one case setting forth boilerplate case law regarding our standard of review relevant to sufficiency challenges, Appellant argues that the evidence identifying him as the shooter was insufficient because he "was wearing khaki/tan pants during the relevant time period" and "the assailant was wearing dark blue jeans or blue jeans." *Id.* Thus, he baldly asserts that "[i]t was not [Appellant] that killed [the victim.]" *Id.* He also asserts that the Commonwealth's identification evidence was insufficient because Tiffanie McCall testified that her boyfriend, Nashawn Jones, admitted that he killed the victim. *Id.*

Our review indicates that Appellant's argument is essentially a challenge to the credibility of the Commonwealth's witnesses Tiffanie McCall and Amin Budd. Appellant's assertions do not raise a proper sufficiency challenge. *See Commonwealth v. Small*, 741 A.2d 666, 672 (Pa. 1999) (explaining that this Court will not review a sufficiency claim where the argument in support

goes only to the weight of the evidence). Thus, this issue garners Appellant no relief.[12]

In his third issue, Appellant challenges the weight of the evidence. *Id.* at 13-15. In particular, Appellant highlights the discrepancy between the video surveillance recording of him exiting his girlfriend's car at 2:34 PM wearing khaki or tan pants and Timothy and Amin Budd's statements that the victim's killer wore dark blue jeans or blue jeans. *Id.* at 14. Appellant also notes that Tiffanie McCall testified that Nashawn Jones admitted to killing the victim and that there was no forensic evidence implicating Appellant in the crime. *Id.* at 15.

When considering challenges to the weight of the evidence, we apply the following precepts. "The weight of the evidence is exclusively for the finder of fact, who is free to believe all, none[,] or some of the evidence and to determine the credibility of the witnesses." *Commonwealth v. Talbert*, 129 A.3d 536, 545 (Pa. Super. 2015) (citation omitted). Resolving contradictory testimony and questions of credibility are matters for the finder of fact. *Commonwealth v. Hopkins*, 747 A.2d 910, 917 (Pa. Super. 2000). It is well-settled that we cannot substitute our judgment for that of the trier of fact. *Talbert*, *supra* at 546.

---

[12] Moreover, Appellant cites one boilerplate case pertaining to sufficiency challenges, but he has not provided any analysis of the facts of the instant case in light of this, or any other, authority. Accordingly, even if he had provided an argument in support of a sufficiency challenge, our review would be fatally hampered by his lack of development.

Moreover, appellate review of a weight claim is a review of the trial court's exercise of discretion in denying the weight challenge raised in the post-sentence motion; this court does not review the underlying question of whether the verdict is against the weight of the evidence. **See id.** at 545-46. "Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is [or is not] against the weight of the evidence." **Id.** at 546. "One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice." **Id.**

Furthermore, "in order for a defendant to prevail on a challenge to the weight of the evidence, the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court." **Id.** (citation omitted). As our Supreme Court has made clear, reversal is only appropriate "where the facts and inferences disclose a palpable abuse of discretion[.]" **Commonwealth v. Morales**, 91 A.3d 80, 91 (Pa. 2014) (citations omitted, emphasis in original).

"[A] true weight of the evidence challenge concedes that sufficient evidence exists to sustain the verdict but questions which evidence is to be believed." **Commonwealth v. Thompson**, 106 A.3d 742, 758 (Pa. Super. 2014) (citation omitted). For that reason, the trial court need not view the

evidence in the light most favorable to the verdict winner, and may instead use its discretion in concluding whether the verdict was against the weight of the evidence. ***Commonwealth v. Widmer***, 744 A.2d 745, 751 n.3 (Pa. 2000).

In this issue, Appellant essentially asks us to reassess the credibility of the witnesses, in particular that of Amin Budd and Tiffanie McCall, and reweigh the testimony and evidence presented at trial. We cannot and will not do so. Our review of the record shows that the evidence is not so tenuous, vague, or uncertain, and the verdict was not so contrary to the evidence as to shock the court's conscience. Accordingly, we discern no abuse of discretion in the trial court's denial of Appellant's weight claim. Appellant is, thus, not entitled to relief.

In his final issue, Appellant purports to challenge the discretionary aspects of his sentence. Appellant's Brief at 15.

Challenges to the discretionary aspects of sentencing are not automatically reviewable as a matter of right. ***Commonwealth v. Hunter***, 768 A.2d 1136, 1144 (Pa. Super. 2001). Prior to reaching the merits of a discretionary sentencing issue, we must determine: (1) whether appellant has filed a timely notice of appeal; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence; (3) whether appellant's brief sufficiently addresses the challenge in a statement included pursuant to Pa.R.A.P. 2119(f); and (4) whether there is a substantial question

that the sentence appealed from is not appropriate under the Sentencing Code. **Commonwealth v. Evans**, 901 A.2d 528, 533 (Pa. Super. 2006).

Appellant failed to include a Rule 2119(f) Statement in his Brief and the Commonwealth objected to its omission.[13] Commonwealth's Brief at 17. Appellant has, thus, waived his challenge to the discretionary aspects of his sentence. Pa.R.A.P. 2119(f); **Commonwealth v. Sanchez**, 848 A.2d 977, 986 (Pa. Super. 2004). **See also Commonwealth v. Kiesel**, 854 A.2d 530, 533 (Pa. Super. 2004) (holding that this Court is precluded from reviewing the merits of the claim when the Commonwealth objects to the omission of a Pa.R.A.P. 2119(f) Statement).

For the foregoing reasons, we affirm Appellant's Judgment of Sentence.

Judgment of Sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/8/2021

---

[13] Appellant's entire argument in support of this claim consists of a citation to Pa.R.A.P. 2119(f) followed by:

> The appellant recognizes that the consecutive sentence was a legal sentence. But what is the point. The appellant cannot serve more than life. But it is to give the appellant hope.

Appellant's Brief at 15.