J-S77033-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| RASHON A. MARSHALL | : | |
| | : | No. 1014 MDA 2017 |
| Appellant | | |

Appeal from the Judgment of Sentence May 24, 2017
In the Court of Common Pleas of Berks County Criminal Division at
No(s):  CP-06-CR-0004873-2015

BEFORE:   BENDER, P.J.E., LAZARUS, J., and STEVENS*, P.J.E.

MEMORANDUM BY STEVENS, P.J.E.:          **FILED DECEMBER 18, 2017**

Appellant, Rashon A. Marshall, appeals from the judgment of sentence entered in the Court of Common Pleas of Berks County following his conviction at a bench trial on the charges of aggravated assault, endangering the welfare of a child, simple assault, and recklessly endangering another person.[1]  After a careful review, we affirm Appellant's judgment of sentence, in part, and vacate, in part.

Appellant was arrested in connection with the physical abuse of his minor daughter, A.S.M. ("Victim"), and represented by counsel, he proceeded

---

[1] 18 Pa.C.S.A. §§ 2702(a)(9), 4304(a)(1), 2701(a)(1), and 2705, respectively.  Appellant was acquitted of aggravated assault under 18 Pa.C.S.A. § 2702(a)(1).

---

*   Former Justice specially assigned to the Superior Court.

to a bench trial on May 24, 2017. The trial court has summarized the evidence

presented at trial as follows:

[Appellant], Brittany Smith ("Smith"), and their daughter (Victim), lived together at 415 16th Street ("the Residence") in the City of Reading. [N.T., 5/24/17,] at 7. On July 30, 2015, the childcare arrangement was for Smith to go to work, while Appellant was to take care of Victim. *Id.* at 6. Victim was one years old at the time. *Id.* at 8. Prior to Smith's departure, Victim was "[n]ormal, happy, playful, [and] smiling." *Id.* However, Victim became "cranky" and started to cry when Smith left at 8:15 a.m. *Id.* at 22. There was no smell of alcohol on Victim's breath at this time. *Id.* at 23.

Soon after Smith arrived at work, Smith received a call from Appellant stating that Victim had fallen and that he was calling emergency services. *Id.* at 11. At 8:43 a.m., emergency services arrived at the Residence. *Id.* at 50. At this time, according to paramedic Scott Wentzel, Victim was unconscious. *Id.* at 49. Appellant told the paramedic that he found Victim lying downstairs on the sofa in this condition. *Id.* at 51. Victim was rushed to the hospital and intensive medical care began. *Id.* at 29.

At the hospital, Victim was attended to by Dr. Ankit Shah. *Id.* at 30. The doctor stated that, at her arrival, Victim was unresponsive to painful stimuli and was struggling to breathe. *Id.* at 31. There were no initial signs of trauma, however, once Victim was put on the ventilator and given fluids bruising started to develop on her chest. *Id.* Additionally, a blood test revealed a blood alcohol content of .06%. *Id.* at 33, 61. Once Victim was stabilized[,] she was medevacked to Children's Hospital in Philadelphia. *Id.* at 33-35.

At Children's Hospital, on July 31, 2015, Dr. Carla Parkin-Joseph was one of Victim's physicians, and at trial, [she] was qualified as an expert in child abuse. *Id.* at 58-59. From medical tests and her examination, she observed that Victim had ligament injuries and a broken artery in her neck. *Id.* at 62. The broken artery could have resulted in a stroke, but did not. *Id.* The doctor also stated that Victim had bruising to her chest, bruising to her spleen, and a laceration to her liver. *Id.* at 62-64. The liver laceration caused bleeding into the abdomen and was considered life threatening. *Id.* at 62-63. In the expert opinion of Dr. Parkin-Joseph, these injuries, in their totality, were not the result of medical treatment or falling from a couch. *Id.* at 64-68. The

injuries were the result of non-accidental trauma or physical abuse. *Id.* Moreover, significant monitoring has been required for Victim to heal from the injuries [she] sustained. *Id.* at 67.

Contemporaneous with Victim's medical treatment, Detective Christopher Santoro made contact with Appellant. *Id.* at 73. He and his supervisor suspected that Victim's injuries were the result of child abuse. *Id.* During initial questioning, Appellant was asked what caused Victim's injuries. *Id.* at 75. In response, he stated that Victim was acting normally and sitting on the couch until suddenly she slumped over and became unresponsive. *Id.* He denied striking [Victim]. *Id.* at 76. The next day, Appellant modified his story to state [that] the day prior to Victim's injuries he tapped Victim's stomach as a reaction to her misbehaving, but that she was not hurt. *Id.* at 77. Then, on August 3, 2015, Appellant added to his story that he tapped Victim on the stomach three times just prior to the incident. *Id.* at 80. He recalled to the detective that about 30 seconds later Victim became limp. *Id.* However, Appellant stated that he thought the injury may have been caused by him slamming on the breaks in his automobile, while Victim was a passenger. *Id.* at 82. No other witnesses could support Appellant's version of events. *Id.*

Appellant was then charged and incarcerated prior to trial. During his incarceration, he made several phone calls to Smith. *Id.* at 18. His calls were legally recorded and played at trial. Relevant instantly, Appellant stated that he didn't do this on purpose, but does not clarify what he did. *Id.*

Trial Court Opinion, filed 8/2/17, at 3-4.

At the conclusion of the bench trial, the trial court convicted Appellant of the offenses indicated *supra*, and on that same date, after Appellant indicated he was prepared to proceed to sentencing, the trial court held a sentencing hearing. At the conclusion of the hearing, the trial court relevantly sentenced Appellant as follows:

[For aggravated assault], [Appellant] is committed for a period of not less than 9 [years] nor more than 18 years to the Bureau of Corrections; He is not RRRI eligible; [Appellant] shall

- 3 -

have no contact with persons under the age of 18 except that he may have supervised contact with his daughter.

[For endangering the welfare of a child], [Appellant] is placed on probation for a period of 5 years under the supervision of the Pennsylvania Board of Parole; Probation shall commence at the expiration of the order imposed [for aggravated assault].

N.T., 5/24/17, at 103-04. The trial court determined the remaining convictions merged for sentencing purposes, and thus, the trial court imposed no further penalty.

Appellant filed a timely post-sentence motion, which the trial court denied on June 5, 2017. This timely appeal followed, and all Pa.R.A.P. 1925 requirements have been met.

On appeal, Appellant presents the following issues:

I.   Whether the evidence presented at trial with regard to [ ] aggravated assault was insufficient to prove beyond a reasonable doubt that Appellant attempted to cause or intentionally, knowingly, or recklessly caused serious bodily injury to a child less than 13 years of age?

II.  Whether the evidence presented at trial with regard [to] endangering the welfare of a child was insufficient to prove beyond a reasonable doubt that Appellant knowingly endangered the welfare of the child by violating a duty of care, protection, or support?

III. The verdicts of guilty to [ ] aggravated assault and [ ] endangering the welfare of [a child] were contrary to the weight of the evidence presented at trial.

IV.  Whether the court erred and imposed an illegal sentence by including a special condition on [ ] aggravated assault, barring Appellant from contact with persons under the age of 18 and allowing only supervised contact?

V.   [Whether] [t]he trial court erred and abused its discretion in imposing an aggravated range sentence of not less than 9 years nor more than 18 years incarceration, without giving

- 4 -

adequate reasons for justifying an aggrevated [*sic*] range sentence?

Appellant's Brief at 8.[2]

In his first and second issues, Appellant contends the evidence was insufficient to sustain his convictions for aggravated assault and endangering the welfare of a child. With regard to aggravated assault, Appellant does not dispute that Victim sustained serious bodily injury; however, he suggests that the evidence fails to establish how Victim sustained her injuries or that Appellant was responsible for Victim's injuries. With regard to endangering the welfare of a child, Appellant suggests the evidence fails to establish that he "knowingly" endangered the welfare of Victim since, when he "tapped" her, he did not do so with the intention of harming her.

Our review of a challenge to the sufficiency of the evidence is guided by the following:

> There is sufficient evidence to sustain a conviction when the evidence admitted at trial, and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict-winner, are sufficient to enable the fact-finder to conclude that the Commonwealth established all of the elements of the offense beyond a reasonable doubt. The Commonwealth may sustain its burden "by means of wholly circumstantial evidence." Further, we note that the entire trial record is evaluated and all evidence received against the defendant is considered, being cognizant that the trier of fact is free to believe all, part, or none of the evidence.

---

[2] We have renumbered Appellant's issues.

*Commonwealth v. Martin*, 627 Pa. 623, 101 A.3d 706, 718 (2014) (citation omitted).

Subsection 2702(a)(9) of the aggravated assault statute provides that a person is guilty of aggravated assault if he "attempts to cause or intentionally, knowingly or recklessly causes serious bodily injury to a child less than 13 years of age, by a person 18 years of age or older." 18 Pa.C.S.A. § 2702(a)(9). Subsection 4304(a)(1) pertaining to endangering the welfare of a child provides that "[a] parent, guardian or other person supervising the welfare of a child under 18 years of age, or a person that employs or supervises such a person, commits an offense if he knowingly endangers the welfare of the child by violating a duty of care, protection or support." 18 Pa.C.S.A. § 4304(a)(1). This Court has established a three-part test for determining whether the elements of endangering the welfare of a child have been met:

> (1) the accused was aware of his duty to protect the child; (2) the accused was aware that the child was in circumstances that could threaten the child's physical or psychological welfare; and (3) the accused has either failed to act or has taken action so lame or meager that such actions cannot reasonably be expected to protect the child's welfare.

*Commonwealth v. Bryant*, 57 A.3d 191, 197 (Pa.Super. 2012) (citations omitted).

Viewing the evidence in the light most favorable to the Commonwealth, as verdict winner, the evidence reveals that Victim was injured sometime between 8:15 a.m. (when Smith left for work) and 8:43 a.m. (when

emergency personnel arrived). During this time, Appellant was the only other person in the house with Victim, who suffered a "significant trauma." Appellant eventually admitted to police that he "tapped" Victim three times on the stomach; however, Dr. Parkin-Joseph testified that such "tapping" would not have caused the severe injuries to Victim. Rather, she opined Victim's injuries were due to "non-accidental trauma or physical abuse."

The circumstantial evidence in this case supports the conclusion that Appellant was the perpetrator of the significant trauma to Victim, which was caused by "non-accidental trauma or physical abuse." Contrary to Appellant's assertion, the Commonwealth was permitted to utilize circumstantial evidence in meeting its burden of proof. *See Commonwealth v. Bruce*, 916 A.2d 657 (Pa.Super. 2007). Thus, the evidence was sufficient to sustain Appellant's conviction for aggravated assault under Subsection 2702(a)(9) and endangering the welfare of a child under Subsection 4304(a)(1).

In his next issue, Appellant contends the trial court's verdicts of guilt as to aggravated assault and endangering the welfare of a child are contrary to the weight of the evidence.[3] Specifically, he contends the evidence reveals that, after Victim was injured, he displayed conduct indicative of a non-guilty conscience, including calling 911, cooperating with the authorities, and traveling to the hospital. Further, he suggests the evidence reveals "Victim's

_____

[3] Appellant presented his weight of the evidence claim in his post-sentence motion.

- 7 -

injuries may have occurred on the hospital ride to [Children's Hospital of Philadelphia]." Appellant's Brief at 29.

Our standard of review of a weight of the evidence claim was explained in **Commonwealth v. Konias**, 136 A.3d 1014, 1022 (Pa.Super. 2016), as follows:

> When we review a weight-of-the-evidence challenge, we do not actually examine the underlying question; instead, we examine the trial court's exercise of discretion in resolving the challenge. This type of review is necessitated by the fact that the trial judge heard and saw the evidence presented. Simply put, [o]ne of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice. A new trial is warranted in this context only when the verdict is so contrary to the evidence that it shocks one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail.

**Id**. at 1022 (citations, quotation marks, and quotations omitted).

In rejecting Appellant's weight of the evidence claim in the case *sub judice*, the trial court indicated that it found Dr. Parkin-Joseph's testimony to be credible, particularly her opinion that Victim's injuries were caused by "non-accidental trauma or physical abuse" (as opposed to being transported to the hospital). Trial Court Opinion, filed 8/2/17, at 12. We are bound by the trial court's credibility determination in this regard. **See Konias**, **supra**.

Further, the fact Appellant may have been remorseful after he physically abused Victim does not render the evidence of his guilt against the weight of the evidence. Additionally, contrary to Appellant's assertion, the trial court found that Appellant did not, in fact, cooperate fully with authorities following

Victim's injuries in that he offered no legitimate reason for the substantial injuries suffered by Victim during the half hour she was alone with Appellant. This finding was within the fact-finder's province, as was the inference to be drawn therefrom. *See Konias*, *supra*. As Appellant has not convinced us that the trial court abused its discretion in rejecting Appellant's weight of the evidence claim, we conclude that he is not entitled to relief. *See id.*

In his next issue, Appellant contends the trial court imposed an illegal sentence with regard to his conviction for aggravated assault. Specifically, citing to *Commonwealth v. Mears*, 972 A.2d 1210 (Pa.Super. 2009), he argues the trial court placed an illegal condition on his prison sentence; namely, that he be barred from contact with persons under the age of 18 with the exception that he may have supervised contact with his daughter. We are constrained to agree.

Initially, we note that, since Appellant's issue ultimately concerns the statutory authority for the imposition of a condition of sentence, it is a challenge to the legality of the sentence. *See id.*; *Commonwealth v. Pinko*, 811 A.2d 576 (Pa.Super. 2002) ("The issue of whether the trial court possessed the authority to impose a particular sentence implicates the legality of the sentence.").

> The scope and standard of review applied to determine the legality of a sentence are well established. If no statutory authorization exists for a particular sentence, that sentence is illegal and subject to correction. An illegal sentence must be vacated. In evaluating a trial court's application of a statute, our standard of review is

- 9 -

plenary and is limited to determining whether the trial court committed an error of law.

**Commonwealth v. Leverette**, 911 A.2d 998, 1001-02 (Pa.Super. 2006) (citations omitted).

In **Mears**, the appellant was convicted of violating the Uniform Firearms Act, and he was sentenced to a term of thirty months to sixty months in prison for count one (less one day) and twenty-four to forty-eight months in prison for count two. The trial court "conditioned the appellant's parole or probation on his consent to random searches by the Gun Violence Task Force." **Mears**, 972 A.2d at 1211.

On appeal, the appellant in **Mears** challenged whether the trial court had the authority to direct random searches of the appellant's residence as a condition of parole. In ruling that the trial court had no such authority, this Court relevantly held as follows:

> First, we note that the trial court did not sentence [the] appellant to probation; thus, there can be no probation conditions. Secondly, because the court sentenced [the] appellant to a maximum term of incarceration of two or more years, [the] appellant's parole would be under the exclusive supervision of the Pennsylvania Board of Probation and Parole ("PBPP") and not the Court of Common Pleas. 61 P.S. § 331.17, **and see Commonwealth v. Camps**, 772 A.2d 70, 74 (Pa.Super. 2001) (holding that "[I]t is well settled that the Pennsylvania Board of Probation and Parole has exclusive authority to determine parole when the offender is sentenced to a maximum term of imprisonment of two or more years [.]"). Therefore, any condition the sentencing court purported to impose on [the] appellant's state parole is advisory only. **See** 61 P.S. § 331.18.
>
> ***

- 10 -

After careful consideration, we are constrained to conclude that the portion of the sentence ordering random searches is of no legal force, as the trial court was without the authority to impose this condition. Any special condition of parole will be under the jurisdiction of the PBPP. Hence, the portion of [the] appellant's sentence that ordered random searches is vacated.

*Mears*, 972 A.2d at 1212.

In the case *sub judice*, in addressing Appellant's challenge to the special condition, the trial court indicated the following:

Appellant avers that the [trial] court's sentencing order limiting him to supervised visits with his daughter and imposing a "no contact" provision with all other persons under the age of eighteen was [in error]. He elaborates that imposing these special conditions was not within the [trial] court's authority, but the authority of the Pennsylvania Board of Probation and Parole. Adding, that the provisions we ordered are merely advisory. After reviewing this argument, we are constrained to agree that the [trial] court exceeded its authority by imposing the aforementioned special sentencing conditions. A [trial] court may impose special sentencing conditions in two limited circumstances, which are not present here.

First, a [trial] court may impose special sentencing conditions during a sentence of probation. . .[where the conditions] are "reasonably calculated to aid in the defendant's rehabilitation."] [However,] [i]nstantly, all special sentencing conditions imposed were on the period of incarceration. Though Appellant was sentenced to a period of probation, no special sentencing conditions were imposed on this sentence. As such, this authority did not permit the [trial] court to impose these special conditions during sentencing.

Second, the [trial] court may impose special conditions on a period of incarceration when statutory authority permits. However, if no statutory authority exists the sentence is subject to correction. Instantly, the Legislature is silent in regards to the imposition of special conditions for aggravated assault. Therefore, the [trial] court does not have statutory authority for the imposition of the aforementioned special conditions and the sentence is subject to correction.

- 11 -

> Furthermore, a [trial] court lacks the authority to impose special conditions on a period of parole. The Pennsylvania Board of Probation and Parole has exclusive authority in these matters[.]

Trial Court Opinion, filed 8/2/17, at 6-7 (citations omitted).

Here, Appellant was sentenced to a maximum term of imprisonment of two years or more for aggravated assault. Thus, we agree with the trial court that it was without the authority to impose the special terms upon Appellant's prison sentence and/or as a condition of possible parole.[4] *See Camps*, 772 A.2d at 74 ("[I]t is well settled that the Pennsylvania Board of Probation and Parole has exclusive authority to determine parole when the offender is sentenced to a maximum term of imprisonment of two or more years[.]"). Thus, we vacate the "no contact"/supervised contact condition placed on Appellant's prison sentence as it is a legal nullity. *Commonwealth v. Coulverson*, 34 A.3d 135, 141 (Pa.Super. 2011) (holding that the trial court's imposition of a "no contact" restriction with the victims, their families, and friends following release on parole exceeded the court's lawful authority where the appellant was sentenced to a maximum period of incarceration of two years or more, and thus, this Court vacated this portion of the sentence). However, as our disposition does not otherwise impact the sentence imposed

---

[4] Although not dispositive, we note that the Commonwealth agrees the trial court exceeded its authority in attempting to place a condition on Appellant's prison sentence and parole. *See* Commonwealth's Brief at 7, 9-10.

upon Appellant, and in particular, the term of incarceration, we need not remand for re-sentencing. *See Mears*, *supra*.

In his final issue, Appellant contends the trial court erred in imposing a sentence in the aggravated range for aggravated assault without considering the factors set forth in 42 Pa.C.S.A. § 9721(b) and providing adequate reasons on the record for the aggravated range sentence. Appellant's claims present a challenge to the discretionary aspects of his sentence. *See Commonwealth v. Cartrette*, 83 A.3d 1030 (Pa.Super. 2013) (*en banc*) (explaining claim sentencing court failed to consider Section 9721(b) factors pertains to discretionary sentencing matters); *Commonwealth v. Fullin*, 892 A.2d 843 (Pa.Super. 2006) (holding claim sentencing court erred in failing to state on the record the reasons for imposition of aggravated range sentence pertains to discretionary aspects of sentencing).

A challenge to the discretionary aspects of sentencing is not automatically reviewable as a matter of right. *Commonwealth v. Hunter*, 768 A.2d 1136 (Pa.Super. 2001). Prior to reaching the merits of a discretionary sentencing issue:

> We conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* [Pa.R.Crim.P. 720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

*Commonwealth v. Evans*, 901 A.2d 528, 533 (Pa.Super. 2006) (citations omitted).

Here, Appellant filed a timely notice of appeal and a timely post-sentence motion in which he adequately preserved his discretionary aspect of sentencing claims. Further, Appellant included a separate Pa.R.A.P. 2119(f) statement in his brief. As to whether Appellant has presented a substantial question, we note the following:

> The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process.

*Commonwealth v. Moury*, 992 A.2d 162, 170 (Pa.Super. 2010) (citation, quotation marks, and quotation omitted).

"This Court has previously found a substantial question to be raised where an appellant alleged that the sentencing court. . .failed to consider relevant sentencing criteria, including the protection of the public, the gravity of the underlying offense and the rehabilitative needs of appellant [as provided for in 42 Pa.C.S.A. § 9721(b)]." *Commonwealth v. Serrano*, 150 A.3d 470, 473 (Pa.Super. 2016) (citation omitted). "[Further,] [t]he failure to set forth adequate reasons for the sentence imposed has been held to raise a substantial question." *Commonwealth v. Macias*, 968 A.2d 773, 776 (Pa.Super. 2009) (citation omitted). Accordingly, we find that Appellant has

- 14 -

raised a substantial question and will proceed to review the merits of his claims.

It is well-settled that:

Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Gonzalez*, 109 A.3d 711, 731 (Pa.Super. 2015) (quotation omitted).

42 Pa.C.S.A. § 9721(b), pertaining to sentencing generally, relevantly provides:

**(b) General standards.**—[T]he court shall follow the general principle that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant. . . .In every case in which the court imposes a sentence for a felony or misdemeanor. . . the court shall make as a part of the record, and disclose in open court at the time of sentencing, a statement of the reason or reasons for the sentence imposed.

42 Pa.C.S.A. § 9721(b) (bold in original).

Nevertheless, "[a] sentencing court need not undertake a lengthy discourse for its reasons for imposing a sentence or specifically reference the statute in question[.]" *Commonwealth v. Crump*, 995 A.2d 1280, 1283 (Pa.Super. 2010). "Rather, the record as a whole must reflect the court's reasons and its meaningful consideration of the facts of the crime and the

- 15 -

character of the offender." ***Commonwealth v. Malovich***, 903 A.2d 1247, 1253 (Pa.Super. 2006) (citation omitted).

In the case *sub judice*, the trial court specifically stated on the record that it reviewed a pre-sentence investigation report, and the Commonwealth recited Appellant's prior record score, offense gravity score, and the applicable sentencing guideline ranges for the trial court's consideration. N.T., 5/24/17, at 95-97. The Commonwealth reminded the trial court of the severity of Victim's injuries, as well as the fact that Appellant has a history of violence and anger management issues. ***Id.*** at 98. Defense counsel argued for leniency, noting that Appellant's prior crimes were more than ten years old. ***Id.*** at 100. The trial court permitted Appellant to make a statement, and Appellant stated, "I just want to be able to get home to my daughter and my family." ***Id.*** at 101.

The trial court then stated on the record the following reasons for its sentence:

> I have taken into account many things, not limited to the testimony that I've heard here today.
>
> I've taken into account the evidentiary findings that I made during the course of the trial, which I outlined at the outset of our afternoon proceeding here.
>
> I've also taken into account, and thank God, the fact that the victim in the case, apparently, has had a good recovery, certainly [a] better one than probably anyone could have possibly expected under the circumstances. That does not diminish the fact of the severity of her injuries, but, nevertheless, is something I think that should be noted.
>
> I've taken into account the—I've taken into account the fact that it is my conclusion that this happened through anger and

recklessness rather than any intention to harm the child. I think the testimony was fairly consistent, with all the Commonwealth's witnesses even, that [Appellant] was a loving father. Whether or not he was able to control [his] temper or anger is a different question and one that, frankly, we need not answer. The facts of the case are what they are.

I've taken into account the provisions of the sentencing guidelines.

I've taken into account, of course, [Appellant's] prior record.

*Id.* at 102.

The trial court indicated in its opinion that, after being fully aware of the pre-sentence investigation report, the impact of the assault upon Victim's life, the circumstances surrounding the offense, the applicable sentencing guidelines, and Appellant's past violent criminal history, it concluded that an aggravated range sentence was appropriate for Appellant's aggravated assault of Victim. *See* Trial Court Opinion, filed 8/2/17, at 6. We find no abuse of discretion and conclude Appellant's issues are meritless.

For all of the forgoing reasons, we affirm in all respects, except that we vacate the "no contact"/supervised contact condition placed on Appellant's prison sentence/possible parole for aggravated assault.

Judgment of sentence affirmed, in part, and vacated, in part. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/18/2017