J-S51010-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA  :   IN THE SUPERIOR COURT OF
                                :            PENNSYLVANIA
                                :
          v.                 :
                                :
                                :
REGGIE WILLIAMS-SMITH       :
                                :
          Appellant       :    No. 953 EDA 2017

Appeal from the Judgment of Sentence February 13, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0001879-2016

BEFORE:  DUBOW, J., NICHOLS, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY DUBOW, J.:         **FILED FEBRUARY 28, 2019**

Appellant, Reggie Williams-Smith, appeals from the February 13, 2017 Judgment of Sentence entered in the Philadelphia County Court of Common Pleas following his jury convictions of Aggravated Assault, Simple Assault, Carrying a Firearm Without a License, Carrying a Firearm in Public in Philadelphia, Persons Not to Possess a Firearm, and Possessing an Instrument of Crime.[1]  After careful review, we affirm.

In an Opinion filed on September 13, 2017, the trial court detailed the factual history underlying the instant appeal.  **See** Trial Ct. Op., 9/13/17, at 3-6.  We adopt the trial court's recitation of the facts for the purpose of this appeal.  In summary, at approximately 7:30 PM on December 23, 2015, Appellant assaulted the victims, Mr. and Mrs. Lugo (the "Victims") as they attempted to enter their car, which they had parked in a lot on East Luzerne

_____

[1] 18 Pa.C.S. §§ 2702; 2701; 6106; 6108; 6105; and 907, respectively.

Street in Philadelphia. Appellant was wearing a hooded sweatshirt at the time of the assault, but his face was clearly visible to the Victims. Appellant held a gun to Mrs. Lugo's head and attempted to rob her. Mr. Lugo and Appellant fought, and Appellant shot Mr. Lugo in his left side. After Appellant fled, the Victims found a cell phone not far from where Appellant had been standing. Philadelphia Police later identified the cell phone as belonging to Appellant. The Victims identified Appellant from police photo arrays, following which police arrested Appellant.

Following a trial,[2] on December 6, 2016, the jury convicted Appellant of Aggravated Assault, Simple Assault, Carrying a Firearm Without a License, Carrying a Firearm in Public in Philadelphia, and Possessing an Instrument of Crime.[3] The trial court conducted a separate, non-jury trial on the Persons Not to Possess a Firearm charge, after which it convicted Appellant of that charge. On February 13, 2017, after considering a court-ordered Pre-Sentence Investigation Report and the argument of the parties, the court sentenced Appellant to an aggregate term of 17 to 34 years' incarceration. In particular, the court sentenced Appellant to serve a 10- to 20-year term of

_____

[2] The Commonwealth presented the testimony of the following witnesses at trial: (1) the Victims; (2) Philadelphia Detectives James Miles, Al Bender, Danielle Slobodian, and James Perfidio; (3) Philadelphia Police Officers Joseph Moore and Erik Pross; (4) Appellant's girlfriend, Brandi Maye; and (5) Appellant's probation officer, Michael Manuel. Appellant did not testify on his own behalf or present the testimony of any other witnesses.

[3] The jury acquitted Appellant of Robbery.

incarceration for his Aggravated Assault conviction;[4] two consecutive 1- to 2-year terms of incarceration for his Simple Assault and Carrying a Firearm Without a License convictions; a consecutive 5- to 10-year term of incarceration for his Persons Not to Possess a Firearm conviction; and two concurrent terms of 1- to 2-years' incarceration for his Possessing an Instrument of Crime and Carrying a Firearm in Public in Philadelphia convictions.

On February 22, 2017, Appellant filed a Post-Sentence Motion in which he challenged the weight of the evidence, and both the legality and discretionary aspects of his sentence. With respect to the discretionary aspects of his sentence, Appellant specifically complained that his sentence is unduly harsh and excessive because it precludes him from becoming eligible for parole for at least 17 years, and was not the least restrictive sentence necessary. Post-Sentence Motion, 2/22/17, at ¶¶ 8-9. He further alleged that the court did not appropriately consider mitigating factors. *Id.* at 10. The trial court denied Appellant's Motion on February 24, 2017.

This timely appeal followed. Both Appellant and the trial court have complied with Pa.R.A.P. 1925.[5]

_____

[4] This is a mandatory minimum sentence pursuant to 42 Pa.C.S. § 9714 imposed because Appellant has a prior first-degree Robbery conviction.

[5] With respect to his discretionary aspects of sentencing claim, Appellant claimed in his Rule 1925(b) Statement that his sentence is unduly harsh and excessive because it is essentially a life sentence, is not the least restrictive

Appellant raises the following three issues on appeal:

1. Did the trial court err and/or abuse its discretion when it denied [Appellant's] request to give a charge to the jury pursuant to **Commonwealth v. Kloiber**, 106 A.2d 820 (Pa. 1954), where an eyewitness showed hesitation and qualified and hedged his identification of [A]ppellant when presented with a photo array including [Appellant's] photo by stating that [Appellant's] photo "looks similar" to the perpetrator but that [Appellant] has a "different complexion" than the perpetrator, and where both identification witnesses originally believed the perpetrator to be a person other than [Appellant]—namely the witnesses' son?

2. Is the verdict of guilty with respect to the charge of [A]ggravated [A]ssault, [S]imple [A]ssault, and weapons offenses against the weight of the evidence and so contrary to the evidence that it shocks one's sense of justice where:

   [a]    The testimony of the complainants is inconsistent with the contemporaneous 911 calls made by disinterested witnesses;

   [b]    The testimony of the complainants is inconsistent with the prior statements given by the complainants regarding the incident;

   [c]    The complainants did not call 911 following the incident but, rather, inexplicably called a friend;

   [d]    The complainants both testified that they originally thought the perpetrator was their teenage Latino-Anglo son, not [Appellant] who is a 30[-]year-old African-American man;

   [e]    The complainant Mr. Lugo testified that [Appellant] had a different complexion than the perpetrator; [and]

   [f]    The two eyewitnesses to the alleged aggravated assault testified that the man who attempted to rob the

---

sentence necessary to effectuate the aims of the Pennsylvania sentencing laws, and the court did not take into account all mitigating factors. Rule 1925(b) Statement, 4/3/17, at 2-3 (unpaginated).

female victim is the same person who shot the male victim
but the jury found [Appellant] not guilty of robbery[?]

3. Is the sentence imposed, which is tantamount to a life sentence
under the circumstances of this [Appellant], unduly harsh and
greater than that which would be consistent with the protection
of the public, the gravity of [Appellant's] conduct as it relates
to the impact on the life of others in the community, and the
rehabilitative needs of [Appellant]?

Appellant's Brief at 7-8.

## **Jury Instruction**

In his first issue, Appellant challenges the court's denial of his request

for a jury instruction. In particular, Appellant claims the trial court erred in

refusing to provide the jury with the Pennsylvania Suggested Standard Jury

Instruction (Crim.) 4.07B "Identification Testimony—Accuracy in Doubt"

instruction, articulated in ***Commonwealth v. Kloiber***, 106 A.2d 820 (Pa.

1954). Appellant's Brief at 26-28.

Our standard of review in assessing a trial court's jury instruction is as

follows:

> When evaluating the propriety of jury instructions, this Court will
> look to the instructions as a whole, and not simply isolated
> portions, to determine if the instructions were improper. We
> further note that[] it is an unquestionable maxim of law in this
> Commonwealth that a trial court has broad discretion in phrasing
> its instructions, and may choose its own wording so long as the
> law is clearly, adequately, and accurately presented to the jury for
> its consideration. Only where there is an abuse of discretion or
> an inaccurate statement of the law is there reversible error.

***Commonwealth v. Antidormi***, 84 A.3d 736, 754 (Pa. Super. 2014). "The

trial court is not required to give every charge that is requested by the parties

and its refusal to give a requested charge does not require reversal unless the

Appellant was prejudiced by that refusal." *Commonwealth v. Sandusky*, 77 A.3d 663, 667 (Pa. Super. 2013).

At issue herein is whether the court's refusal to give a *Kloiber* instruction constituted an abuse of discretion. In *Kloiber*, our Supreme Court held as follows:

> [W]here the witness is not in a position to clearly observe the assailant, or he is not positive as to identity, or his positive statements as to identity are weakened by qualification or by [the] failure to identify [the] defendant on one or more prior occasions, the accuracy of the identification is so doubtful that the Court should warn the jury that the testimony as to identity must be received with caution.

*Kloiber*, *supra* at 826-27. However, "[w]here the opportunity for positive identification is good and the [witness's identification] is not weakened by prior failure to identify, but remains, even after cross-examination, positive and unqualified, the testimony as to identification need not be received with caution." *Id.* at 826.

Our High Court subsequently clarified, in *Commonwealth v. Ali*, 10 A.3d 282, 303 (Pa. 2010), that a defendant is entitled to a *Kloiber* instruction only when a witness (1) was not in a position to clearly observe the defendant, or is not positive as to identity; (2) equivocated on the identification; or (3) failed to identify the defendant on prior occasions. *See also Commonwealth v. Johnson*, 139 A.3d 1257, 1280-81 (Pa. 2016).

Identification testimony need not "be received with caution where it is positive, unshaken, and not weakened by a prior failure to identify."

- 6 -

*Commonwealth v. Jones*, 954 A.2d 1194, 1198 (Pa. Super. 2008). Thus, "[w]here an eyewitness has had 'protracted and unobstructed views' of the defendant and consistently identified the defendant 'throughout the investigation and at trial,' there is no need for a *Kloiber* instruction." *Ali*, 10 A.3d at 303.

Appellant argues here that, when identifying Appellant in the photo array as the perpetrator, Mr. Lugo's statement was sufficiently equivocal, hedged, and qualified that the court should have issued an "Accuracy in Doubt" charge to the jury. Appellant's Brief at 26-28. He argues that Mr. Lugo's identification statement that the person in the photo "looks similar, less facial hair, same build, complexion is different[,]" is "the textbook definition of qualifying and/or hedging with respect to an identification." *Id.* at 27 (citing N.T., 12/2/16, at 104). Appellant also contends that Mr. Lugo's concession that, prior to the commencement of the attack, Mr. Lugo initially believed the man who was approaching his vehicle was his teenaged son supports his argument. *Id.* (citing N.T., 11/30/16, at 43).

The trial court rejected Appellant's request to instruct the jury in accordance with the Pa.S.S.J.I (Crim.) 4.07B, "Identification Testimony— Accuracy in Doubt" instruction. Instead, the court instructed the jury in accordance with Pa.S.S.J.I. (Crim.) 4.07A, "Identification Testimony— Accuracy Not in Doubt." In relevant part, the court charged the members of the jury to consider the following factors when judging the Victims' testimony:

Did the witnesses have a good opportunity to observe the perpetrator of the offense? Was there sufficient lighting for them to make their observations? Were they close enough to the individual to note their facial and other physical characteristics as well as any clothing the individual was wearing? Have, in this case, [the Victims] made a prior identification of the defendant as the perpetrator of these crimes at any other proceeding? [Were the Victims'] identification[s] positive or [were they] qualified by any hedging of inconsistencies? Finally, during the course of the case, did the witness identify anyone else as the perpetrator? In considering whether or not to accept the testimony of [the Victims], you should consider all the circumstances under which the identifications were made.

N.T., 12/5/16, at 58; Pa.S.S.J.I. (Crim.) 4.07A.

The trial court, concluding that Mr. Lugo did not equivocate or qualify his identification of Appellant as the perpetrator, explained its decision to give the jury the "Accuracy Not in Doubt" instruction, as follows:

In the present case, [Mr.] Lugo immediately answered in the affirmative when show[n] [] Appellant's photograph during the police[-]administered photo array. Detective Perfidio noted that the complainant said, "he looks similar, less facial hair, same build, complexion is different." But[, Mr.] Lugo did not waver in his identification of who confronted him and his wife on the night in question. He unequivocally answered in the negative when shown other photographs in the array. In addition, he did not add any qualifiers to any other photographs[,] but appeared confident that [] Appellant was the perpetrator. [Mr.] Lugo did not identify any individuals other than []Appellant and stated Appellant was the man who shot him.

In addition, the complainant identified [] Appellant in court and gave a corroborating description to police during the investigation. Given these facts, the complainant was able to identify [] Appellant with a high degree of accuracy. Since no factors were present to cause the identification by Mr. Lugo to be of doubtful accuracy, it was appropriate for the court to give [this instruction].

In addition, the charge given to the jury adequately addressed the issues presented at trial. The instructions discussed the issues

- 8 -

surrounding lighting, description of suspects, and timing of the identification.

Trial Ct. Op. at 17 (citations to the Notes of Testimony omitted).

The record supports the trial court's refusal to issue a ***Kloiber*** instruction to the jury. Our review of the instructions as a whole indicate that the court did not abuse its discretion or err as a matter of law in giving the Pa.S.S.J.I. (Crim.) 4.07A "Identification Testimony—Accuracy Not in Doubt" instruction. Thus, Appellant is not entitled to relief on this claim.

## **Weight of the Evidence**

In his second issue, Appellant challenges the trial court's denial of his weight of the evidence claim. In particular, Appellant claims that the court erred by ignoring the fact that: (1) the Victims testified that the same person who shot Mr. Lugo also attempted to rob Mrs. Lugo, but that the jury acquitted Appellant of Robbery; (2) the Victims both initially believed that, as the perpetrator approached their car, he was their teenaged son; (3) the witnesses offered allegedly conflicting testimony about the perpetrator's getaway car; (4) Mrs. Lugo's testimony about the incident allegedly conflicted with the written statement she gave to police on the night of the crime; (5) neither of the Victims called 911 immediately following the incident; (6) when identifying Appellant, Mr. Lugo stated the man in the photo "looks similar [to Appellant], less facial hair, same build, complexion is different;" and (7) the Victims did not know the perpetrator, the event was stressful, occurred at night, involved a weapon, and the perpetrator was of a different race than the

Victims. Appellant's Brief at 29-31 (citations to the Notes of Testimony omitted).

Appellant further argues that the jury denied him justice when it assigned "greater weight to circumstantial evidence that [Appellant] **could** be the shooter'" especially given the Victim's testimony that the robber and the shooter were the same person. *Id.* at 31 (emphasis in original).

When considering challenges to the weight of the evidence, we apply the following precepts. "The weight of the evidence is exclusively for the finder of fact, who is free to believe all, none[,] or some of the evidence and to determine the credibility of the witnesses." *Commonwealth v. Talbert*, 129 A.3d 536, 545 (Pa. Super. 2015) (quotation marks and citation omitted). "Resolving contradictory testimony and questions of credibility are matters for the [finder of fact]." *Commonwealth v. Hopkins*, 747 A.2d 910, 917 (Pa. Super. 2000). It is well-settled that we cannot substitute our judgment for that of the trier of fact. *Talbert*, *supra* at 546.

Moreover, appellate review of a weight claim is a review of the trial court's exercise of discretion in denying the weight challenge raised in the post-sentence motion; this court does not review the "underlying question of whether the verdict is against the weight of the evidence." *See id.* at 545-46. "Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is [or is not] against the weight of the

evidence." *Id.* at 546. "One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice." *Id.*

Furthermore, "[i]n order for a defendant to prevail on a challenge to the weight of the evidence, the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court." *Id.* (internal quotation marks and citation omitted). As our Supreme Court has made clear, reversal is only appropriate "where the facts and inferences disclose a palpable abuse of discretion[.]" *Commonwealth v. Morales*, 91 A.3d 80, 91 (Pa. 2014) (citations and emphasis omitted).

"[A] true weight of the evidence challenge concedes that sufficient evidence exists to sustain the verdict but questions which evidence is to be believed." *Commonwealth v. Thompson*, 106 A.3d 742, 758 (Pa. Super. 2014). For that reason, the trial court need not view the evidence in the light most favorable to the verdict winner, and may instead use its discretion in concluding whether the verdict was against the weight of the evidence. *Commonwealth v. Widmer*, 744 A.2d 745, 751 n.3 (Pa. 2000).

In denying Appellant's weight of the evidence claim, the trial court emphasized the "strength and consistency of the testimony presented by the Commonwealth's witnesses." Trial Ct. Op. at 19. The court noted that, "the jury chose to credit the testimony of eyewitnesses, the police officers[,] and detectives investigating the case" as is the jury's prerogative. *Id.* It further

- 11 -

noted that the Victims' testimony "was consistent and told a corroborated story" that "was substantiated by the testimony of the various police officers" and the physical evidence recovered from the area of the crime. *Id.* Our review indicates that the trial court carefully evaluated the record and the evidence in reviewing Appellant's weight claim.

Appellant essentially asks us to reassess the witnesses' credibility and to reweigh the testimony and evidence presented at trial. We cannot and will not do so. Our review of the record shows that the evidence is not tenuous, vague, or uncertain, and the verdict was not so contrary to the evidence as to shock the court's conscience. Accordingly, we discern no abuse of discretion in the trial court's denial of Appellant's weight claim.

**Discretionary Aspects of Sentencing**

In his last issue, Appellant challenges the discretionary aspects of his sentence. Appellant, relying on *Commonwealth v. Coulverson*, 34 A.3d 135 (Pa. Super. 2011), complains that his sentence is unduly harsh and excessive because it "spans years beyond [A]ppellant's 60th birthday," and baldly claims that it was not the least restrictive sentence necessary.[6] Appellant's Brief at 41. He further alleges that the court did not appropriately consider mitigating factors, including Appellant's age, rehabilitative needs, his

---

[6] In *Coulverson*, this Court found the defendant's aggregate maximum sentence of 90 years' imprisonment excessive where the trial court refused to consider "any sentence other than [the] statutory maximum[.]" *Coulverson*, 34 A.3d at 149.

positive influence on his step-children, and his compliance with state parole prior to his arrest in this matter.[7] *Id.* at 43.

A challenge to the discretionary aspects of sentencing is not automatically reviewable as a matter of right. *Commonwealth v. Hunter*, 768 A.2d 1136, 1144 (Pa. Super. 2001). Prior to reaching the merits of a discretionary sentencing issue:

> We conduct a four[-]part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* [Pa.R.Crim.P. 720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.[] § 9781(b).

*Commonwealth v. Evans*, 901 A.2d 528, 533 (Pa. Super. 2006) (citations omitted).

In the instant case, Appellant met the first three elements by filing a timely Notice of Appeal, properly preserving the issue in a Post-Sentence

---

[7] In his Brief to this Court, Appellant also avers, for the first time, that the court abused its discretion when it sentenced him to consecutive sentences for offenses committed concurrently; sentenced him in the aggravated range on one charge, resulting "in a sentence imposed upon [A]ppellant which is above the statutory maximum for any one of the offenses[;]" and failed to take into consideration in sentencing him that, because he committed his offenses with a firearm, the deadly weapon enhancement already applied to his Aggravated Assault conviction. Appellant's Brief at 36-40. Appellant did not challenge his sentence on these grounds in his Post-Sentence Motion or at the time of sentencing. We, thus, conclude Appellant has waived these claims. *See* Pa.R.A.P. 302(a) ("[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

Motion to modify his sentence, and including a Statement of Reasons Relied Upon for Allowance of Appeal pursuant to Pa.R.A.P. 2119(f).

As to whether Appellant has presented a substantial question, we note:

> The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process.

*Commonwealth v. Moury*, 992 A.2d 162, 170 (Pa. Super. 2010) (citations and quotation omitted).

Although Appellant frames his argument as one implicating the court's failure to consider mitigating factors, a close reading of Appellant's *Coulverson* argument reveals that it is nothing more than a restatement of his challenge to the imposition of consecutive sentences. Appellant's Brief at 42-43. Appellant's challenge to the court's imposition of consecutive, rather than concurrent, sentences fails to raise a substantial question. *See Commonwealth v. Lamonda*, 52 A.3d 365, 372 (Pa. Super. 2012) (*en banc*) (the imposition of consecutive rather than concurrent sentences will present "a substantial question in only the most extreme circumstances, such as where the aggregate sentence is unduly harsh, considering the nature of the crimes and the length of imprisonment."). Because Appellant has failed to raise a substantial question, we decline to consider the merits of his claim.

Judgment of Sentence affirmed.

Judge Nichols did not participate in the consideration or decision of this case.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/28/19