J-A04019-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MIGUEL MORCIGLIO-FIGUEROA | : | |
| | : | |
| Appellant | : | No. 879 MDA 2024 |

Appeal from the Judgment of Sentence Entered February 2, 2024
In the Court of Common Pleas of Lancaster County Criminal Division at
No(s):  CP-36-CR-0001169-2022

BEFORE:  PANELLA, P.J.E., KING, J., and LANE, J.

MEMORANDUM BY KING, J.:          **FILED: APRIL 13, 2026**

Appellant, Miguel Morciglio-Figueroa, appeals from the judgment of sentence entered in the Lancaster County Court of Common Pleas, following his jury trial convictions for one count each of rape of a child, aggravated indecent assault, statutory sexual assault, unlawful contact with a minor, corruption of minors, rape by forcible compulsion, sexual assault, and indecent assault – person less than 13 years of age.[1]  We affirm.

The relevant facts and procedural history of this matter are as follows. In 2007 or 2008, when E.P.[2] was approximately five or six years old, her parents separated.  Subsequently, in 2008, E.P.'s mother, Evelina Parra,

_____

[1] 18 Pa.C.S.A. §§ 3121(c), 3125(b), 3122(b), 6318(a)(1), 6301(a)(1)(ii), 3121(a)(1), 3124.1, and 3126(a)(7), respectively.

[2] At the time of trial, E.P. was 19 years old.  However, because the crimes occurred while she was a minor, and because they are of a sexual nature, we refer to her by her initials.

began dating Appellant, who eventually moved into Ms. Parra's Lancaster County home, along with E.P., E.P.'s brother, and E.P.'s grandmother.

In the fall of 2009, when E.P. was approximately six or seven years old, Appellant came into her room while she was sleeping. Appellant, who smelled of alcohol, pulled the covers off of E.P., took off her pants, and put his penis in her vagina against her will. E.P. attempted to fight back, but Appellant held her down.

When E.P. was approximately ten years old and had just graduated from fifth grade, she was in the basement bathroom of her home. Appellant, again smelling of alcohol, followed her into the basement, entered the bathroom, and turned off the lights. Appellant raped E.P., putting his penis in her vagina, and told her not to tell anyone. Appellant threatened that if she told anyone, he would make "sure it happened worse next time." (N.T. Trial, 10/16/23, at 93). E.P. remained silent about the assaults.

When E.P. was approximately 13 years old, Appellant came into her third-floor attic bedroom, checking on the air conditioner and walking around the room. However, he soon took E.P.'s sheets and clothes off, forced himself on top of her, and forcibly inserted his penis into her vagina. Appellant held down E.P.'s arms and shushed her while covering her mouth. Although E.P.'s grandmother was asleep in the next room, she was a heavy sleeper and did not wake up.

When E.P. was approximately 15 years old, she came home from a football game around 10:00 p.m. and found Appellant drinking in the kitchen.

E.P. went to her room, collected clothes for the shower, and was naked, about to get into the shower, when Appellant entered the bathroom and grabbed her arm. Appellant pushed her in front of the sink and forced his penis into her vagina.

At some point after this last incident, E.P. again went to the bathroom to shower and Appellant attempted to enter the bathroom. At that time, E.P. told her grandmother, who told Ms. Parra. Ms. Parra did not believe E.P. and told her to close the door and lock it next time. After that, E.P. felt as though no one would believe her and did not disclose the assaults to anyone. She became so afraid of Appellant that she began sleeping with her grandmother.

In July 2019, when she was approximately 16 years old, E.P. began dating Elijah Gonzalez. During this time, when the two would spend nights together, Mr. Gonzalez frequently needed to wake E.P. from nightmares. Eventually, E.P. disclosed the assaults to him. During the disclosure, she was extremely emotional and crying uncontrollably. E.P. told Mr. Gonzalez she wanted to keep the abuse a secret. Subsequently, E.P. wrote a letter to her father, Steven Pabon, who she normally saw every few months, explaining that she was scared and wanted to get out of Ms. Parra's house. Mr. Gonzalez gave the letter to Mr. Pabon and, with Mr. Gonzalez's help, E.P. ran away from home a few days later to live with her father.

Mr. Pabon noticed changes in E.P.'s behavior after she came to live with him. She seemed afraid and performed poorly in school, so he took her to a therapist. In 2021, E.P. told her therapist that Appellant had abused her. The

therapist then contacted police on E.P.'s behalf.

When Detective Jared Snader interviewed Appellant, he denied the allegations and asserted that E.P. was lying. According to Appellant, his relationship with E.P. deteriorated after Appellant and Ms. Parra had a new baby approximately one month prior. Detective Snader noticed that Appellant's hand shook while he looked at a picture of E.P. and her half-sibling. Detective Snader also interviewed Mr. Pabon and E.P., whose version of events was generally very consistent, and who seemed truthful.

Appellant was arrested and charged with the aforementioned crimes. The matter proceeded to jury trial on October 16, 2023. At trial, in addition to the testimony of E.P., Mr. Gonzalez, and Detective Snader, the Commonwealth presented the testimony of Julie Stover, a nurse practitioner and expert witness in the field of medical examinations of child sexual abuse, and Lisa Cameron, a mental health therapist and expert witness in the field of victim behavior and victim response to sexual trauma.

Nurse Stover testified that there would have been no physical evidence of abuse when E.P. disclosed, as the vagina is an area of the body that heals very quickly. Further, it is not uncommon for child victims of sexual assault to disclose weeks, months, or even years after incidents of abuse.

Lisa Cameron testified regarding common responses to trauma, which include fight, flight, or freeze. Further, she explained that there is a power dynamic between adult perpetrators and child victims, which often leads to delayed reporting, especially where the perpetrator is still in the home, in a

- 4 -

caretaking role, or has some other kind of influence over the everyday activities of the child. Ms. Cameron also testified about piecemeal disclosure, which is when a trauma victim discloses bits and pieces of a story over a certain amount of time. Ms. Cameron explained that you cannot assume a victim would tell specific relatives, other important people in their lives, or even strangers the same details or amount of details. Ms. Cameron emphasized that there are no rules or expectations in how victims of sexual violence will tell their story or react to the abuse while it is happening. Finally, Ms. Cameron testified regarding the long-term effects of traumatic experience, including anxiety and depression, which can manifest in nightmares, panic and anxiety attacks, and an inability to perform daily activities.

Appellant presented the testimony of Ms. Parra and Viviana Mejia-Maria, E.P.'s grandmother. Ms. Parra claimed that Appellant and E.P. had a normal stepfather and daughter relationship and she never noticed a change in E.P.'s behavior toward Appellant or any reluctance by E.P. to be in Appellant's presence. Nevertheless, Ms. Parra described a time, around approximately 2019, when E.P.'s grades declined and she began to exhibit behavioral issues. Ms. Parra installed cameras around the house because E.P.'s grandmother did not like the way E.P. and Mr. Gonzalez were acting around each other. According to Ms. Parra, E.P. left to live with her father because she did not like Ms. Parra's house rules and because Ms. Parra told her that Mr. Gonzalez was not allowed in their home anymore.

Ms. Meijia-Maria testified that she moved to Lancaster to take care of E.P. when E.P. was approximately two years old. They had a very good relationship, and E.P. began sleeping with her prior to Appellant moving into the home and continued to do so until she was 13. Ms. Meijia-Maria believed Appellant and E.P. had a good relationship and she never noticed a change in E.P.'s behavior around him. Ms. Meijia-Maria only noticed a change in behavior after E.P. began dating Mr. Gonzalez, when E.P. did not want to spend as much time with or sleep in the same bed as her grandmother.

On October 17, 2023, the jury convicted Appellant of all counts. The court deferred sentencing for the preparation of a pre-sentence investigation ("PSI") report, and preparation for a hearing to determine whether Appellant met the criteria of a sexually violent predator ("SVP").

On February 2, 2024, the parties appeared at the sentencing and SVP hearing. The Commonwealth presented Dr. Robert Stein from the Sex Offender Assessment Board ("SOAB") to testify as an expert in forensic psychiatry. Dr. Stein has been a member of the SOAB since 1998 and has conducted approximately 1,000 evaluations on convicted sex offenders. In conducting his evaluation, Dr. Stein reviewed the report from the Board investigator, the court order for the assessment, the response from defense counsel as to participation, the criminal complaint, affidavit of probable cause and criminal information, reports from Lancaster City Police, current Childline information, trial transcripts from the jury trial, records from Children and Youth Services, the PSI report, and an employment query conducted by the

Board investigator. Appellant declined to participate in the assessment.

Dr. Stein went through the fifteen statutory factors regarding SVP designation when conducting his evaluation. He noted that E.P. reported the use of force. The offense was a contact offense, meaning hands-on contact that included various types of sexual penetration. Further, the relationship of the individual to the victim was that of a stepparent to a stepdaughter. The age of the victim was a significant factor, since she was six or seven when the acts began, which Dr. Stein found was consistent with pedophilic interest in a young child. Appellant was 27 when the acts started and E.P. was very young, and the age difference was consistent with sexual deviance. There were recent reported issues with depression, and a history, based on E.P.'s report, that suggested alcohol abuse and some offenses associated with alcohol intoxication. Finally, having a sustained sexual interest in a young child is associated with increased risk. Factors Dr. Stein found did not apply included multiple victims, any display of unusual cruelty, the mental capacity of the victim, and the use of illegal drugs.

Dr. Stein determined that Appellant had exhibited predatory behavior while using his relationship to sexually assault a young girl. Appellant's behavior was consistent with two diagnoses. First, pedophilic disorder, which is a sustained interest in a young child, with acts of rape at age six or seven, ten, and twelve, with additional acts at age thirteen and fifteen, resulting in a nine-year course of conduct of non-consenting sexual acts with a child. Second, other specified paraphilic disorder, with the specification being non-

consent, or a pattern of non-consenting sexual behavior. Dr. Stein opined that both conditions are the impetus to sexual offending or associated with sexual offending. Both disorders can be contained with treatment but are not curable conditions: the interest or arousal is always there. Accordingly, Dr. Stein felt there was sufficient evidence for a lifetime condition, and that this condition could override Appellant's emotional or volitional control. Because the acts took place over a long period of time, there was sufficient evidence that would make sexual reoffending likely if Appellant were given unsupervised access to underaged girls in the future. Based on the above, Dr. Stein concluded that Appellant should be classified as an SVP.

At the conclusion of the SVP and sentencing hearing, the court classified Appellant as an SVP and Tier III sex offender with lifetime registration and sentenced him to an aggregate term of 38 to 87 years of incarceration.

On February 9, 2024, Appellant timely filed a post-sentence motion seeking reconsideration of his sentence, a motion for judgment of acquittal, a motion for new trial claiming the verdict was against the weight of the evidence, a request to reconsider the sex offender registration requirement, and raising claims of ineffective assistance of counsel. On June 7, 2024, the court denied Appellant's motion.

On June 20, 2024, Appellant timely filed a notice of appeal. On June 28, 2024, the court ordered Appellant to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal. On July 11, 2024, Appellant timely complied.

On appeal, Appellant raises the following issues for our review:

I. Whether the trial court erred in denying the post-sentence motion due to admission of improper quasi-expert opinion testimony given that [Appellant] received such obvious ineffective assistance of counsel when trial counsel failed to object to, 1) the detective's improper testimony that he detected no signs of deception when interviewing the complainant and 2) the forensic interviewer's improper expert testimony that children never lie about sexual abuse, that the court should have considered the claim immediately pursuant to [*Commonwealth v. Holmes*, 621 Pa. 595, 79 A.3d 562 (2013)].

II. Whether the trial court erred in imposing an excessive, effective life sentence based solely on the seriousness of the offense, failing to consider [Appellant's] individual characteristics, and considering improper sentencing factors such as his exercise of the right to remain silent at trial and sentencing.

III. Whether the trial court erred in requiring [Appellant] to register as a sexually violent predator based solely on the offenses of conviction.

(Appellant's Brief at 5).

In Appellant's first issue, he argues that the trial court erred in denying his post-sentence motion due to the admission of improper quasi-expert opinion testimony. Appellant asserts that trial counsel provided "obvious ineffective assistance of counsel" when he failed to object to Detective Snader's testimony that he observed no signs of deception while interviewing E.P., and Ms. Cameron's testimony that children do not typically lie about sexual abuse. (*See* Appellant's Brief at 5, 28). Appellant avers that the court should have considered the claim immediately pursuant to *Holmes, supra*. We disagree.

Generally, claims of ineffective assistance of counsel should be raised in

a timely petition filed pursuant to the Post Conviction Relief Act ("PCRA")[3] and not on direct appeal. *See Holmes, supra* at 619, 79 A.3d at 576 (stating that absent particular, narrow exceptions, "claims of ineffective assistance of counsel are to be deferred to PCRA review").

> However, our Supreme Court has recognized three exceptions to the general rule. In *Holmes*, the Court held that a trial court has discretion to address ineffectiveness claims on direct review cases where (1) there are extraordinary circumstances in which trial counsel's ineffectiveness is apparent from the record and "meritorious to the extent that immediate consideration best serves the interests of justice;" or (2) "there is good cause shown," and the defendant knowingly and expressly waives his entitlement to seek subsequent PCRA review of his conviction and sentence. *Id*. at 563-63. More recently, our Supreme Court adopted a third exception, which requires "trial courts to address claims challenging trial counsel's performance where the defendant is statutorily precluded from obtaining subsequent PCRA review." *Commonwealth v. Delgros*, 646 Pa. 27, 183 A.3d 352, 361 (2018).

*Commonwealth v. James*, 297 A.3d 755, 760-61 (Pa.Super. 2023).

Instantly, the trial court observed:

> In the instant case, Appellant claims this [c]ourt abused its discretion in failing to consider the claim immediately because no further factfinding was necessary and "the record so clearly established that trial counsel provided … ineffective assistance of counsel[.]" Appellant cites to [*Holmes, supra*] which states "there may be an extraordinary case where the trial court, in the exercise of its discretion, determines that a claim (or claims) of ineffectiveness is both meritorious and apparent from the record so that immediate consideration and relief is warranted." *Holmes*, 79 A.3d at 577.

---

[3] 42 Pa.C.S.A. §§ 9541-9546.

Appellant failed to provide quotes from the record or cite directly to it, so the [c]ourt is uncertain what Appellant is referring to as "quasi-expert opinions" by Detective Snader and Ms. Cameron. However, the [c]ourt can only speculate that Appellant is referring to Detective Snader's statement that "[d]uring his interview with [E.P.,] the recorded one, [he] did not observe any signs of deception at all." [(N.T. Trial, 10/16/23,] at 238. Likewise, the [c]ourt can only assume Appellant is referring to Ms. Cameron's response when she was asked if, in her experience, it is "normal for children to lie about being sexually abused[.]" *Id.* at 263. Ms. Cameron responded, "[t]hat's not normal, no. In my work, of the literally thousands of children and adults I worked with, that is not a typical phenomena that I have experienced." *Id.*

This [c]ourt, in exercising its discretion, does not find Appellant's claim of ineffectiveness to be meritorious and apparent from the record to require immediate consideration. The only thing that was "clearly established" by the record is that Appellant is misquoting and mischaracterizing the statements made by each witness— one of which was an expert witness. Additionally, Appellant did not allege any good cause for seeking early consideration of his ineffectiveness claim, and he did not expressly waive his entitlement to PCRA review. Thus, none of the recognized exceptions to the rule are applicable in this case.

(Trial Court Opinion, 11/27/24, at 24-25) (some citations omitted).

The record supports the trial court's conclusion that Appellant does not meet the criteria required for this Court to consider claims of ineffective assistance of counsel on direct review. **See James, supra**. Appellant did not expressly waive his entitlement to PCRA review: in fact, he admits that the "second exception does not apply here." (**See** Appellant's Brief at 42). Rather, Appellant argues that his claim is based on the record showing such obvious ineffectiveness that immediate consideration best serves the interests

of justice. Nevertheless, we cannot agree with Appellant that the record so clearly establishes that counsel was ineffective for failing to object to the challenged comments. In other words, it is unclear from the record whether Appellant would be able to succeed on all three prongs of the ineffectiveness test where, likely, an evidentiary record would need to be developed to explain the reasonable basis prong. **See Commonwealth v. Rosenthal**, 233 A.3d 880, 887 (Pa.Super. 2020) (explaining that ineffectiveness claim must be **apparent** from record and meritorious such that immediate consideration best serves interests of justice). **See also Commonwealth v. Watson**, 310 A.3d 307, 311 (Pa.Super. 2024) (noting that ineffectiveness claim is not "apparent from the record" if trial court needs to schedule evidentiary hearing to determine merits of claim). Therefore, Appellant is not entitled to relief on this claim. **See James, supra**.

In Appellant's second issue, he argues that the court abused its discretion when it imposed an excessive, effective life sentence, and considered improper sentencing factors such as Appellant's decision not to speak at sentencing. As well, Appellant asserts the court failed to consider other mitigating factors, such as Appellant's lack of a prior record, community support, and lengthy work history. Appellant concludes that the trial court abused its sentencing discretion, and this Court must vacate and remand for resentencing. We disagree.

As presented, Appellant's issue implicates the discretionary aspects of sentencing. **See generally Commonwealth v. Johnson-Daniels**, 167 A.3d

- 12 -

17, 27 (Pa.Super. 2017) (explaining claim that sentence is excessive and does not comport with protection of public, gravity of offense, and defendant's rehabilitative needs implicates discretionary aspects of sentence); *Commonwealth v. Lutes*, 793 A.2d 949 (Pa.Super. 2002) (stating claim that sentence is manifestly excessive challenges discretionary aspects of sentencing); *Commonwealth v. Cruz-Centeno*, 668 A.2d 536 (Pa.Super. 1995), *appeal denied*, 544 Pa. 653, 676 A.2d 1195 (1996) (explaining claim that court did not consider mitigating factors challenges discretionary aspects of sentencing). A challenge to the discretionary aspects of sentencing is not automatically reviewable as a matter of right. *Commonwealth v. Hunter*, 768 A.2d 1136 (Pa.Super. 2001), *appeal denied*, 568 Pa. 695, 796 A.2d 979 (2001). Prior to reaching the merits of a discretionary sentencing issue, we conduct a four-part test to determine:

> (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* [Pa.R.Crim.P. 708(E)]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

*Commonwealth v. Evans*, 901 A.2d 528, 533 (Pa.Super. 2006), *appeal denied*, 589 Pa. 727, 909 A.2d 303 (2006) (internal citations omitted).

When appealing the discretionary aspects of a sentence, an appellant must invoke this Court's jurisdiction by including in his brief a separate concise statement demonstrating a substantial question as to the appropriateness of

the sentence under the Sentencing Code. ***Commonwealth v. Mouzon***, 571 Pa. 419, 812 A.2d 617 (2002); Pa.R.A.P. 2119(f). "The requirement that an appellant separately set forth the reasons relied upon for allowance of appeal furthers the purpose evident in the Sentencing Code as a whole of limiting any challenges to the trial court's evaluation of the multitude of factors impinging on the sentencing decision to **exceptional** cases." ***Commonwealth v. Phillips***, 946 A.2d 103, 112 (Pa.Super. 2008), *cert. denied*, 556 U.S. 1264, 129 S.Ct. 2450, 174 L.Ed.2d 240 (2009) (quoting ***Commonwealth v. Williams***, 562 A.2d 1385, 1387 (Pa.Super. 1989) (*en banc*)) (emphasis in original) (internal quotation marks omitted).

"The determination of what constitutes a substantial question must be evaluated on a case-by-case basis." ***Commonwealth v. Anderson***, 830 A.2d 1013, 1018 (Pa.Super. 2003). A substantial question exists "only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." ***Evans, supra*** at 533.

> Pennsylvania law affords the sentencing court discretion to impose [a] sentence concurrently or consecutively to other sentences being imposed at the same time or to sentences already imposed. Any challenge to the exercise of this discretion does not raise a substantial question. In fact, this Court has recognized the imposition of consecutive, rather than concurrent, sentences may raise a substantial question in only the most extreme circumstances, such as where the aggregate sentence is unduly harsh, considering the nature of the crimes and the length of imprisonment.

*Commonwealth v. Austin*, 66 A.3d 798, 808 (Pa.Super. 2013) (internal citations and quotation marks omitted). Nevertheless, a claim of excessiveness can raise a substantial question as to the appropriateness of a sentence under the Sentencing Code, even if the sentence is within the statutory limits. *Mouzon, supra* at 430, 812 A.2d at 624. Bald allegations of excessiveness, however, do not raise a substantial question to warrant appellate review. *Id.* at 435, 812 A.2d at 627.

Further, "this Court has held on numerous occasions that a claim of inadequate consideration of mitigating factors does not raise a substantial question for our review." *Commonwealth v. Disalvo*, 70 A.3d 900, 903 (Pa.Super. 2013) (internal citation omitted). Nevertheless, an excessive sentence claim **in conjunction** with a claim that the sentencing court failed to consider certain mitigating factors raises a substantial question. *Commonwealth v. Caldwell*, 117 A.3d 763, 769-70 (Pa.Super. 2015). As well, a claim that an aggregate sentence does not comport with the protection of the public, gravity of the offense, and rehabilitative needs of a defendant raises a substantial question. *See Johnson-Daniels, supra*.

Instantly, Appellant filed a timely notice of appeal and preserved his sentencing challenge in a timely post-sentence motion and Rule 2119(f) statement. Further, his excessiveness claim coupled with his complaint that the court failed to consider mitigating factors arguably raises a substantial question for our review. *See Caldwell, supra* at 769-70. Accordingly, we consider the merits of his sentencing issue.

- 15 -

This Court reviews discretionary sentencing challenges based on the following standard:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. An abuse of discretion is more than just an error in judgment and, on appeal, the trial court will not be found to have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, bias or ill-will.

**Commonwealth v. McNabb**, 819 A.2d 54, 55 (Pa.Super. 2003) (quoting **Commonwealth v. Hess**, 745 A.2d 29, 30-31 (Pa.Super. 2000)).

Pursuant to Section 9721(b), "the court shall follow the general principle that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S.A. § 9721(b). Additionally, "a court is required to consider the particular circumstances of the offense and the character of the defendant." **Commonwealth v. Griffin**, 804 A.2d 1, 10 (Pa.Super. 2002). "In particular, the court should refer to the defendant's prior criminal record, his age, personal characteristics and his potential for rehabilitation." **Id**. "The trial court is vested with broad discretion in determining the defendant's sentence since the court is in the best position to view the defendant's character, displays of remorse, defiance or indifference, and the overall effect and nature of the crime." **Commonwealth v. Begley**, 566 Pa. 239, 301, 780 A.2d 605, 643 (2001) (citation omitted). Moreover,

"[l]ack of remorse is an appropriate sentencing consideration."

***Commonwealth v. Summers***, 245 A.3d 686, 695 (Pa.Super. 2021), *appeal denied*, 672 Pa. 708, 276 A.3d 700 (2022).

> ... Where the sentencing court had the benefit of a [PSI report], we can assume the sentencing court "was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." ***Commonwealth v. Devers***, 519 Pa. 88, 101-02, 546 A.2d 12, 18 (1988). ***See also Commonwealth v. Tirado***, 870 A.2d 362, 368 (Pa.Super. 2005) (stating if sentencing court has benefit of PSI, law expects court was aware of relevant information regarding defendant's character and weighed those considerations along with any mitigating factors).

***Commonwealth v. Moury***, 992 A.2d 162, 171 (Pa.Super. 2010).

Instantly, the trial court explained its sentencing rationale as follows:

> I have reviewed the [PSI] report in detail.
>
> I have reviewed the defense sentencing memorandum and all the attachments, as well as the case law that was provided and all of the statements in support of [Appellant].
>
> I have reviewed the three letters provided to me by the Commonwealth.
>
> The [c]ourt imposes sentence as follows:
>
> [Appellant] is 42 years of age, which shows sufficient maturity to understand the significance of his acts.
>
> [Appellant] certainly is intelligent enough to understand the significance of his acts. He completed his GED and, in fact, [obtained] his welding certificate or certification.
>
> As indicated, [Appellant] has learned and is in the process of learning and reading English, but language did not prevent him from knowing or understanding what he was

doing.

According to the [PSI] report [Appellant] has an established work history set forth on page 9 through 10. He was a machine operator from 2016 to 2023, which certainly indicates that he can follow directions.

[Appellant] does not have a prior criminal record, either as a juvenile or as an adult.

This clearly was a crime of violence which placed the victim's life in danger and created the risk of bodily injury, serious bodily injury or even death. This was a violent offense.

I have considered the [PSI] report in detail. As indicated, I have reviewed all of the documents. I have considered the guidelines of the Sentencing Code. I have considered the character of [Appellant].

And that needs to be mentioned. There are two [faces of the Appellant] standing before me today. One is [an Appellant] whom his family – some of his family and friends know and find it very difficult to believe, and understandably so, the charges that he was convicted of.

I was present. I was the Trial Judge in this case. I have reviewed the transcript in detail. I obviously observed the entire trial. There is no mistake. The man you know committed rape of a child.

I have not heard any words of contrition. I have not heard any remorse. All I hear is continued denial.

For over nine years you tortured this young lady. You took her childhood for your own selfish desires. And in the same time, … you were living a life, an alternate life, with your friends and family.

You have not only destroyed this young lady's life, who is an incredible survivor and who will survive, you have destroyed a family. Because there are people who choose to only accept the person they know and not the person who committed these heinous crimes. So you have not only victimized one person, you have victimized an entire family.

The [c]ourt has considered the penalties authorized by the legislature. Incarceration is warranted because a lesser sentence would depreciate the seriousness of the crime.

I have found as credible Dr. Stein's report and his testimony. This was not a once-and-done opportunity. This is not where you victimized a young girl. This was repeated for over nine years, which leads me to believe that given the opportunity you would victimize others.

\* \* \*

You do not get a volume discount. You do not have the opportunity to say, okay, this is one event. This was a series of events that you chose to do over a period of at least nine years. And the specific incidents that were charged in this case are heinous in and of themselves individually.

(N.T. Sentencing, 2/2/24, at 64-68).

Here, the record reflects that the court had the benefit of a PSI report and considered the mitigating factors therein and, indeed, the court explicitly discussed the factors at issue. ***See Moury, supra***. In his Rule 1925(b) statement, Appellant conceded that the court sentenced him within the standard guidelines. Further, we cannot say that the court erred or abused its broad sentencing discretion by imposing consecutive sentences despite the mitigating factors in this case, where the court explained in detail its sentencing rationale. ***See Austin, supra***. As well, Appellant's long pattern of violent assaults committed against a young child in his care, **in addition** to his lack of remorse, were appropriate sentencing factors for the trial court's consideration. ***See Begley, supra***; ***Summers, supra***. On this record, we see no reason to disrupt the court's sentencing discretion. ***See McNabb,***

*supra*.

In Appellant's third issue, he contends that the trial court erred in designating Appellant as an SVP. According to Appellant, Dr. Stein formed the basis of his opinion that Appellant was an SVP solely on the statutes violated, rather than the presence of any individualized characteristics. Appellant asserts that, for example, Dr. Stein noted that E.P.'s young age was a risk factor, but her young age was also part of the statutory requirements of the crime. As a result, Appellant contends there was "nothing unique" about Dr. Stein's testimony, and that the court erred in designating him an SVP. We disagree.

"In order to affirm an SVP designation, we, as a reviewing court, must be able to conclude that the fact-finder found clear and convincing evidence that the individual is a[n SVP]." *Commonwealth v. Hollingshead*, 111 A.3d 186, 189 (Pa.Super. 2015), *appeal denied*, 633 Pa. 763, 125 A.3d 1199 (2015) (citation omitted). "SVP" is defined as:

> A person who has been convicted of a sexually violent offense ... and who is determined to be a [SVP] ... due to a mental abnormality or personality disorder that makes the person likely to engage in predatory sexually violent offenses. In order to show that the offender suffers from a mental abnormality or personality disorder, the evidence must show that the defendant suffers from a congenital or acquired condition ... that affects the emotional or volitional capacity of the person in a manner that predisposes that person to the commission of criminal sexual acts to a degree that makes the person a menace to the health and safety of other persons. Moreover, there must be a showing that the defendant's conduct was predatory. Predatory conduct is defined as an act directed at a stranger or at a person with

whom a relationship has been instituted, established, maintained, or promoted, in whole or in part, in order to facilitate or support victimization. Furthermore, in reaching a determination, we must examine the driving force behind the commission of these acts, as well as looking at the offender's propensity to re-offend, an opinion about which the Commonwealth's expert is required to opine. However, the risk of re-offending is but one factor to be considered when making an assessment; it is not an "independent element."

**Commonwealth v. Leatherby**, 116 A.3d 73, 84-85 (Pa.Super. 2015) (quoting **Commonwealth v. Stephens**, 74 A.3d 1034, 1038-39 (Pa.Super. 2013)).

SOAB evaluators must consider the following factors when performing SVP assessments:

(1) Facts of the current offense, including:

(i)     Whether the offense involved multiple victims.

(ii)    Whether the individual exceeded the means necessary to achieve the offense.

(iii)   The nature of the sexual contact with the victim.

(iv)    Relationship of the individual to the victim.

(v)     Age of the victim.

(vi)    Whether the offense included a display of unusual cruelty by the individual during the commission of the crime.

(vii)   The mental capacity of the victim.

(2) Prior offense history, including:

(i)     The individual's prior criminal record.

(ii) Whether the individual completed any prior sentences.

(iii) Whether the individual participated in available programs for sexual offenders.

(3) Characteristics of the individual, including:

(i) Age of the individual.

(ii) Use of illegal drugs by the individual.

(iii) A mental illness, mental disability or mental abnormality.

(iv) Behavioral characteristics that contribute to the individual's conduct.

(4) Factors that are supported in sexual offender assessment field as criteria reasonably related to the risk of reoffense.

42 Pa.C.S.A. § 9799.58(b).

Instantly, the trial court observed:

Dr. Robert Stein testified at Appellant's SVP hearing. He explained that he works in psychology at a private practice in Lancaster. He was also a member of the [SOAB] which he described as a board "appointed by the Governor's office, and … tasked with providing reports to aid the [c]ourt in determining if an individual should be classified as [an SVP]." [N.T. Sentencing] at 5. Dr. Stein's *curriculum vitae* was entered into evidence …. **Id.** at 6. After *voir dire*, he was offered and admitted, without objection or question by defense counsel, as an expert in the field of [SVP] assessments. **Id.** at 8.

Dr. Stein evaluated Appellant for a SVP designation and completed a report …. Dr. Stein explained that the report outlines the SVP evaluation criteria. **Id.** at 9. In Appellant's case, Dr. Stein was asked to determine whether Appellant has "a condition that predisposes them in the commission of sexually violent offenses." **Id.** at 10. He reviewed the

following material while conducting his assessment:

> We had the report from the Board investigator; the [c]ourt order for the assessment; the response from defense counsel as to participation; the criminal complaint, affidavit of probable cause and criminal information for this case; reports from Lancaster City Police on this case; current Childline information; trial transcripts from the jury trial in this case; records from Children and Youth; the presentence investigation and an employment query conducted by the Board investigator.

> *Id.* Dr. Stein summarized the facts of the underlying offense and outlined the fifteen factors he must consider, which are specified in 42 Pa.C.S.A. § 9799.24(b).

> He concluded that Appellant's behavior was consistent with two diagnoses: 1) Pedophilic Disorder, and 2) Paraphilic Disorder. He stated that "both of these conditions are the impetus to sexual offending or associated with sexual offending." *Id.* at 14. While they can be "containable with treatment," he noted that there is sufficient evidence they are "lifelong condition[s]." *Id.* at 15.

> Dr. Stein specifically noted the "very long period of time" in which Appellant committed these sexual offenses. N.T. at 15. He concluded that, based on a reasonable degree of professional certainty, Appellant should be classified as a sexually violent predator, explaining that "[t]here is sufficient evidence ... that makes sexual reoffending likely if he should be given unsupervised access to underaged girls in the future." *Id.* At the conclusion of Dr. Stein's credible testimony, the Court found that Appellant met the criteria to be designated as a sexually violent predator. *Id.* at 36-37.

(Trial Court Opinion, 3/24/25, at 7-9). The record supports the trial court's conclusion. Contrary to Appellant's argument, the criteria necessary to determine whether an offender is an SVP necessarily overlaps with some of the statutory definitions of the crimes at issue. As the court summarized

- 23 -

above, Dr. Stein considered carefully all relevant information provided to him, as well as the 15 criteria required to determine whether an offender is an SVP. Of note, Dr. Stein observed the long period of time over which the assaults occurred, and the fact that E.P. was very young when the assaults began. Dr. Stein concluded that Appellant met the criteria for SVP designation.

The court credited Dr. Stein's testimony to conclude that Appellant suffers from a mental abnormality that makes him likely to re-offend. ***See Leatherby, supra***. The record supports the trial court's determination that the Commonwealth presented clear and convincing evidence to support Appellant's classification as an SVP. ***See Hollingshead, supra***. Accordingly, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>04/13/2026</u>

- 24 -